SOPHIE VANDERLIP v. THE CITY OF GRAND RAPIDS
ET AL.

*Municipal corporations—Eminent domain—Grading city street—
Deposit of earth upon adjoining lot—Equity—Injunction.*

In this case the grading of a city street in such a manner as to raise an embankment upon 30 feet of the entire frontage of an abutting lot, and thereby bury a portion of the dwelling-house of the owner therein, is held to amount to a taking of private property for the public use, within the inhibitions of the Constitution; and that in such a case the law does not require such owner to wait until his property is completely destroyed, and then turn him over to an action of trespass to recover his damages, but equity, when appealed to, will interfere and restrain such threatened destruction.

Appeal from superior court of Grand Rapids. (Burlingame, J.) Argued January 11, 1889. Decided February 1, 1889.

Bill to enjoin deposit of earth on complainant's lots as incident to grading street. Defendants appeal. Affirmed. The facts are stated in the opinion.

*Earle & Hyde,* for complainant.

*J. W. Ransom* (*M. J. Smiley,* of counsel), for defendants.

[The points and authorities of counsel are stated and discussed in the opinion.—REPORTER.]

LONG, J. The bill is filed in this cause for an injunction to restrain the city of Grand Rapids and the other two defendants, who are contractors, from dumping or piling earth or other materials on the lots of the complainant, and from depositing earth or other materials

adjacent to her premises, so that the same will slide down thereon; and also from trespassing upon, invading? encroaching upon, or taking said premises, or any part thereof. The cause was heard in the superior court of Grand Rapids, in chancery, on bill and answer; and on November 16, 1888, a final decree was entered as prayed in the bill. Defendants appeal.

The facts, as shown by the bill and answer, are in brief as follows: The complainant is the owner of two lots in the city of Grand Rapids, lying on the west side of College avenue, immediately north of the right of way of the Detroit, Grand Haven & Milwaukee Railway Company. These lots have a frontage of 144 feet on College avenue, and extend back 170 feet, and for which she paid, in 1878, $900. The answer admits the lots to be worth $800. Here the complainant resides with her husband and children. The avenue has never been graded at this point, and follows the natural surface of the ground, and is 66 feet in width. It is now proposed to grade the avenue north, from south of the railroad track across said track, past the lots of the complainant, and so on to the northern limits of the city. At a point some 500 feet south of the railroad track, up to which the avenue is graded, the natural surface of the ground and the avenue thereon descends quite rapidly, so that in front of complainant's lots it is 26 feet below the proposed grade at that point. Then, passing the complainant's lots, the present surface of the avenue rises even more rapidly, and at a greater height, than it does from her lots south, so that her lots lay in a depression about 26 feet below the proposed grade of the avenue. The ridge of ground that crosses the avenue some 500 feet north of complainant's premises is higher than the ridge south of the railroad track, and swings around the north and west sides of the complainant's lots, and immediately

at the rear of the lots, until it meets the railroad track; so that, if the city does as it proposes,—raise the grade of College avenue 26 feet above the present level, or 22 feet above the sills of complainant's dwelling-house, as the answer admits it is proposed to do,—complainant's lots will be left in a depression, surrounded by the embankment of the avenue on the east, the railroad track and ridge on the south, and the northerly ridge on the north and rear, and entirely cut off from access to the avenue.

The answer denies the allegation in the bill that there is no alley to the rear of the lots, and no possible way to get in or out when the avenue in front is raised, and charges that there is a public alley in the rear of and adjoining said premises leading north to More street. But complainant claims that while there is an alley *laid out on the plat* of this part of the city, on the rear of said lots, it only exists on the drawing, and is a fancy sketch, and cannot be actually placed there without great expense, and the removal of a large area of hill.

Upon the complainant's premises are situated her dwelling-house and barn ; the house being an ordinary two-story frame dwelling-house, with kitchen extension at rear, and standing gable-end to the avenue, the east front or end being only 24 feet and 9 inches from the west line of the avenue. In this east end of the house windows are placed on both stories looking upon the street.

On May 14, 1888, the city entered into a contract with the defendants Mathewson and Kloote to grade and improve College avenue, on the unimproved part, past complainant's property, according to certain plans and specifications, in carrying out of which it would result, as the answer admits, that College avenue would be raised in front of complainant's dwelling 22 feet above the sills thereof, and some 26 feet above the level of the

front of complainant's lots; that when so raised the avenue will be of the full width of 66 feet on top of the embankment in front of complainant's house, and, if the walls of the embankment were to be raised perpendicularly, the face of the wall would be only 24 feet and 9 inches distant from the east end of the house. But by the said contract and specifications it is not proposed to raise the avenue between retaining walls, so that the embankments at the present surface of the ground will be only 66 feet in width, as on the top, but it is proposed to raise it by a fill of earth 66 feet wide on top, and slanting out on either side towards the bottom, in conformity to the natural slope of earth when so dumped.

According to the admissions of the answer, when the fill is made as proposed (and the work was to begin at once, by the terms of the contract, and be completed before August 15, 1889), the earth of the embankment will slide back 34 feet and 9 inches, over upon complainant's lots, across their east front, and 10 feet past the side of her house, and will bury the east end of her house in the slope of the fill 5 feet and 9 inches, measured perpendicularly. This will bring the dirt high enough to crush through the front windows of the first story, and flow in and over the floor of her front room, besides taking and occupying for street purposes, without purchasing the same, or taking any proceedings to condemn, a strip of land off of the front of complainant's said lots of nearly 35 feet in width, and 144 feet long. The answer admits the fill will also pass the side of complainant's barn, and bury that on the front end 3 feet and three inches; that the city has not taken or begun any proceedings to condemn said lots, or any part thereof, for street purposes, and has not contemplated taking any such proceeding, nor has offered to buy said lots, or any part thereof, or

offered to pay for the same, or to recompense complainant for the taking, damage, or destruction.

The theory of the answer appears to be that the city, under its powers to grade and improve its streets, has the right to raise the grade of College avenue in front of complainant's lots to the height of the proposed grade, and that if, in doing so, the earth of the fill slides over upon complainant's land, even to the extent stated above, it is an incident to the improvement of the street, and the damages, if any, suffered by the complainant, are consequential, and such that she has no remedy for; that the filling in of the avenue opposite said premises, in the manner proposed, is not a taking of the private property adjoining for public use; and that the city is not required to take proceedings to condemn the same.

The defendants contend that the city of Grand Rapids, by virtue of its charter, has ample authority to make the contemplated improvements. Section 1, tit. 6, of the charter (Local Acts of 1877, pp. 157, 158), provides:

"The common council shall have the care and supervision of the highways, streets, bridges, lanes, alleys, parks, and public grounds in said city, and it shall be their duty to give directions for the repairing, preserving, improving, cleansing, and securing of such highways, bridges, lanes, alleys, parks, and public grounds, and to cause the same to be repaired, cleansed, improved, and secured, from time to time, as may be necessary, to regulate the roads, streets, highways, lanes, parks, and alleys already laid out, or which may hereafter be laid out; and to alter such of them as they shall deem inconvenient."

Section 2, tit. 6, Local Acts of 1877, p. 504, provides:

"The board of public works of said city shall have power, and are empowered, to grade, gravel, raise, level, repair, amend, pave, or cover with broken or pounded stone, plank, or other material, all streets, alleys, lanes, highways, public grounds or sidewalks in said city, and such designated portions of any street, alley, lane, or

highway in said city as the common council by a majority vote of all the members elect shall by resolution declare to be a necessary public improvement."

It is also provided in section 6 of the act organizing said board of public works (3 Local Acts of 1873, pp. 56, 58:)

"Said board of public works is hereby empowered to determine and establish the grade lines of all streets, highways, lanes, alleys, sidewalks, and public grounds in said city, and to locate all necessary sewers, drains, culverts, vaults, arches, and bridges, wells, pumps, and reservoirs in said city; to cause to be graded, graveled, paved, planked, or covered with other materials all such streets, highways, lanes, alleys, sidewalks, and public grounds in said city, and to construct all such main and lateral sewers, drains, culverts, vaults, arches, and bridges, wells, pumps, and reservoirs in said city, as the common council of the city of Grand Rapids shall by resolution declare to be necessary improvements."

It is contended by counsel for the defendants that the law is settled that, unless the charter or statute authorizing the corporation to proceed with such improvements expressly provides a remedy for parties who suffer consequential damages, the corporation is not liable to property-owners for such consequential damages, necessarily resulting from either establishing a grade or changing an established grade on streets, and, if the Legislature gives or provides a remedy in such cases, that remedy alone can be pursued. In support of this proposition counsel for defendants cite section 990 (783) Dill. Mun. Corp. Judge Dillon says:

"The courts by numerous decisions in most of the states have settled the doctrine that municipal corporations, acting under authority conferred by the Legislature to make and repair, or to grade, level, and improve, streets, if they keep within the limits of the streets, and do not trespass upon or invade private property, and exercise reasonable care and skill in the performance of the work resolved upon, are not answerable to the adjoin-

ing owner, whose lands are not actually taken, trespassed upon, or invaded, for consequential damages to his premises, unless there is a provision in the charter of the corporation or in some statute creating the liability. There is no such liability, even though in grading and leveling the street a portion of the adjoining lot, in consequence of the removal of its natural support, falls into the highway. And the same principle applies, and the same freedom from implied liability exists, if the street be embanked or raised so as to cut off or render difficult the access to the adjacent property. And this is so although the grade of the street has been before established, and the adjoining property-owner had erected buildings or made improvements with reference to such grade."

The leading case in this country upon this subject is that of *Callender v. Marsh,* 1 Pick. 417, 430, decided in 1823. The defendant, acting as highway surveyor for the city of Boston, cut down the street in front of plaintiff's house so as to lay bare its walls, and endanger its falling, to remedy which he was obliged to incur large expense. The court, having determined that the work was authorized by legislative enactment, proceeded to consider whether the plaintiff's property was taken within the meaning of the constitution, and whether he could recover upon any ground. This question they solved in the negative. The court held this provision applied only to property actually taken and appropriated by the government, and not to consequential damages; that when the highway was established, whether by condemnation or otherwise, the public acquired not only the right to pass over the surface in the state it was in when first made a street, but also the right to repair and amend the street in such manner as the public needs might from time to time require; that the liability to damages by such alterations was a proper subject for the inquiry of those who laid out the road, or, if the title was acquired by purchase, the proprietor might claim compensation not only for the land taken, but for such damages; and that per-

sons purchasing upon a street after the layout were supposed to indemnify themselves against loss by reason of further improvements, or to take the chance of such further improvements. The court also say that the same principle applied as in case of adjoining proprietors. This case has had an important influence in moulding the law of this country. Lewis, Em. Dom. § 94.

A few years after the decision in *Callender v. Marsh*, *supra*, the same question arose in Tennessee and Kentucky, and was decided in the same way. *Humes v. Mayor*, 1 Humph. 403; *Keasy v. City of Louisville*, 4 Dana, 154. This same question was elaborately considered by the New York court of appeals in *Radcliff's Ex'rs v. Mayor*, 4 N. Y. 195, 203, in 1850. The street was cut down in front of plaintiff's premises so that his soil, shrubbery, fences, etc., fell into the street, and he was put to great expense in restoring his premises, and adapting them to the new grade. The case was said—

" To fall within the principle that a man may enjoy his land in the way such property is usually enjoyed, without being answerable for the indirect or consequential damages which may be sustained by an adjoining landowner."

In leveling and grading the street, says the court, they (the defendants) were at work on their own land, doing a lawful act, for a lawful purpose. It was also held that the damages complained of were not a *taking*, within the constitution, and consequently that the laws authorizing the acts which produced the injuries were valid, and a complete justification.

In conformity with those cases, it has been held in nearly every state in the Union that there can be no recovery for damages to abutting property resulting from a mere change of grade in the street in front of it; there being no physical injury to the property itself, and the

change being authorized by law. These conclusions have been made to rest upon one or more of the following grounds:

1. That, when a street or highway has been laid out, compensation is given once for all, not only for the land taken, but for damages which may at any time be occasioned by adapting the surface of the street to the public needs.

2. That the public, as proprietors of the street, stand in the same relation to the abutting lot-owners as an individual would who owned the strip of land constituting the street, and that their rights, duties, and liabilities are determined by the same rules as apply to adjoining proprietors of land.

3. That this species of damages is not a *taking*, within the meaning of the constitution, and consequently, if the work occasioning the damages is authorized by law, no action will lie. Lewis, Em. Dom. § 97.

Counsel for defendants cite *Pontiac v. Carter*, 32 Mich. 164, and insist that the same principles were involved in that case as in the present. In that case, however, the question involved was the liability of a municipal corporation for an injury resulting from exercise of its legislative powers, and it was denied that any liability could arise so long as the corporation confined itself within the limits of its jurisdiction. It was a case of incidental injury to property caused by the grading of a street. The plaintiff's premises were in no way involved, but they were rendered less valuable by the grading. The injury was mainly or wholly owing to the fact that the plaintiff's dwelling had been erected with reference to a grade previously established, and now changed. This Court in that case followed the rules laid down in *Callender v. Marsh, supra*. This case was followed and approved in *Detroit v. Beckman*, 34 Mich. 125, 128. COOLEY, C. J., delivering the opinion of the court, citing several cases, says:

" All of which follow the early case of *Callender v. Marsh,* 1 Pick. 418, in which it was decided that no recovery could be had for incidental injury to property occasioned by the grading of a street; no question of negligence in the performance of the work being involved. In this State the question which lies at the foundation of this suit is not an open one. In *Larkin v. Saginaw Co.,* 11 Mich. 88, it was decided that no action would lie for an injury resulting from an exercise of legislative authority. In *Pontiac v. Carter,* 32 Mich. 164, which was a case of injury by a change in the grade of a street to buildings previously erected with reference to an established grade, the point was quite fully discussed, and the liability of the city denied. These cases are decisive of the present."

In *Ashley v. Port Huron,* 35 Mich. 296, *Pontiac v. Carter* and *Detroit v. Beckman* were cited and approved.

These cases, and the other cases cited by counsel for defendants, have been ruled upon the principle that the acts complained of did not amount to a *taking* of the private property of another. The learned counsel for the defendant, admitting that this principle underlies these cases, yet insist that the acts complained of in the bill in this case no more amount to a taking, within the meaning of the Constitution, than the cutting down of the street and destroying the foundation and lateral support of the soil of the adjacent proprietor, so that it falls into the street; in other words, that a municipal corporation, under the principles laid down in these cases, acting under legislative authority, may elevate the grade of the street, and allow the dirt and other substances, of which the street is being constructed to flow down upon and cover a portion or the whole of the private property of the adjacent proprietor, and such acts would no more amount to a *taking,* within the Constitution, than the act of cutting down the street so that the lateral support of the adjacent proprietor is destroyed, and his soil allowed to fall from his premises into the street, would

be a *taking;* that, the latter act being held by the great weight of authority in this country not to amount to a taking, the same principle must be applied here, and the act declared not a taking within constitutional principles; and that such acts would be *damnum absque injuria.*

We do not agree with the learned counsel in this proposition. Conceding the weight of authority to favor the proposition that no remedy is given to an adjoining proprietor or abutter upon a public street where a municipal corporation, acting under legislative authority, excavates in a street so that in bringing it to a grade as a public improvement the lateral support of the abutting premises is destroyed, and a portion of the premises permitted to fall or cave into the street, yet the facts in the present case clearly take it out of the principles upon which these cases are held. We do not, however, mean to be understood as deciding that the rule referred to is correct in the broad terms in which some of the cases lay it down, or that cities can lawfully do injury where private parties would be liable for it. The real point in question is whether the acts contemplated by the city and these contractors in grading this street under the conceded facts in the answer amount to a taking of private property within the meaning of the Constitution.

The Constitution of this State provides that—

"The property of no person shall be taken for public use without just compensation therefor." Article 18, § 14.

"The property of no person shall be taken by any corporation for public use without compensation being first made or secured in such manner as may be prescribed by law." Article 15, § 9.

"When private property is taken for the use or benefit of the public, the necessity for using such property, and the just compensation to be made therefor, except when to be made by the State, shall be ascertained by a jury of twelve freeholders." Article 18, § 2.

Security to private property is also guaranteed by the Constitution of the United States, which provides:

"Nor shall private property be taken for public use without just compensation." Article 5, Amends. Const.

The Legislature is powerless to do that which the Constitution prohibits, and whatever power the city of Grand Rapids or its board of public works may possess, under the charter of the city or the board of public works acts, can have no force if the acts contemplated by the city under its contract, for the improvement of the street, amount to a taking of private property, and comes within the inhibition of these constitutional provisions.   The right of exclusion or the right of complete possession and enjoyment is one of the essential elements of property in land.   Can it be said that, if the acts are done as contemplated by this contract for the improvement of this street, the complainant has that exclusive enjoyment and complete possession which the Constitution and the laws guarantee to her?   The plans require the grade to be 66 feet in width at the top, and slanting out on either side towards the bottom, in conformity to the natural slope of the earth when so dumped; thus throwing the dirt over upon complainant's lots something over 30 feet, the entire width of the front of her lots, a distance of 144 feet, and burying a portion of her dwelling in this embankment, closing up the door and the lower windows. This is as much a taking as to that part covered by this embankment as though the complainant had been ejected by any other means.   It is an encroachment upon the land itself, and the complainant has not that full, complete, and absolute control and enjoyment of it, and property in it, as before the embankment was erected. The case comes plainly within the inhibition of the Constitution.   Counsel cite no case where such acts are held

not to amount to a taking, and, on principle, no case can be found which upholds the doctrine for which counsel for defendant contend. In *Broadwell v. City of Kansas,* 75 Mo. 213, the defendant raised the grade of a street about even with the top of plaintiff's house, and the filling encroached upon his lot to such an extent as to crush and ruin his house. The court says:

"Moreover, section 16, art. 1, of the constitution of 1865, provided that 'No private property ought to be taken or applied to public use without just compensation.' Here the city and its servant took the property of plaintiff within the meaning of that section. The taking of property within that prohibition may be either total or absolute, or a taking *pro tanto.* 'Any injury to the property of an individual which deprives the owner of the ordinary use of it is equivalent to a taking, and entitles him to compensation. So a partial destruction or diminution of value of property by an act of government, which directly and not merely incidentally affects it, is to that extent an appropriation.'"

In *Hendershott v. City of Ottumwa,* 46 Iowa, 658, it was claimed by the plaintiff that the city could not legally deposit earth on its streets so that it would roll down the sides of the embankment, upon his lots, while the city claimed that it had the right to widen the top of the embankment to the full width of the street, even though the earth rolled down upon plaintiff's lots. The court says—

"That the city had the right to grade the street to the full width for the purposes of public travel, but it had no right to deposit earth on plaintiff's lots. * * * No one would claim that the city, in making the embankment, had the right to enter upon plaintiff's lots and deposit the earth directly thereon. * * * It seems to us that the city is equally liable for depositing the earth in the street in such a manner that, without ceasing its motion, it passed at once upon the lots. * * * It is a direct encroachment upon the soil of the adjacent lots, by depositing that upon the

earth which was not there before. We have found no case, after diligent search, where it has been held this may be done. On the contrary, many cases recognize a different doctrine."

The court further says:

"The authorities cited by counsel for defendant are all cases where the street was excavated to the line of the adjacent lots, or cases where it does not appear that the embankment actually encroached upon the lots. * * * Acts of the city were done within the limits of the street, and in making the excavations or embankments there was no encroachment upon the soil of the adjacent owners."

Mr. Justice Cooley, in his work on Constitutional Limitations (5th ed.), 671, says:

"Any proper exercise of the powers of government, which does not directly encroach upon the property of an individual, or disturb him in its possession or enjoyment, will not entitle him to compensation, or give him a right of action."

But on page 675 he lays down the principle that—

"Any injury to the property of an individual which deprives the owner of the ordinary use of it is equivalent to a taking, and entitles him to compensation."

In *Pumpelly v. Green Bay Co.*, 13 Wall. 180, Mr. Justice Miller says:

"We are not unaware of the numerous cases in the state courts in which the doctrine has been successfully invoked that for a consequential injury to the property of the individual arising from the prosecution of the improvements of roads, streets, rivers, and other highways, for the public good, there is no redress, and we do not deny that the principle is a sound one in its proper application to many injuries to property so originating. * * * But we are of opinion that the decisions referred to have gone to the uttermost limit of sound judicial construction in favor of this principle, and in some cases beyond it; and that it remains true that where real estate is actually invaded by superinduced additions of water,

earth, sand, or other material, or by having any artificial structure placed on it, so as to effectually destroy or impair its usefulness, it is a taking, within the meaning of the Constitution, and that this proposition is not in conflict with the weight of judicial authority in this country, and certainly not with sound principle."

These views are fully sustained by the following cases: *Transportation Co. v. Chicago,* 99 U. S. 635; *Eaton v. Railroad,* 51 N. H. 504; *Ashley v. Port Huron,* 35 Mich. 296; *Grand Rapids Booming Co. v. Jarvis,* 30 Id. 308; *Ryan v. Brown,* 18 Id. 196; *Gardner v. Trustees,* 2 Johns. Ch. 162; *City of Aurora v. Reed,* 57 Ill. 29; *Nevins v. Peoria,* 41 Id. 502; *Cumberland v. Willison,* 50 Md. 138; *Hay v. Cohoes Co.,* 2 N. Y. 159; *Arimond v. Canal Co.,* 31 Wis. 316; *Pettigrew v. Evansville,* 25 Id. 223; *Rowe v. Portsmouth,* 56 N. H. 291; *Hooker v. New Haven, etc., Co.,* 14 Conn. 146; *Thurston v. St. Joseph,* 51 Mo. 510; *Goodall v. Milwaukee,* 5 Wis. 32; *Rhodes v. Cleveland,* 10 Ohio, 160; *Chicago v. Taylor,* 8 Sup. Ct. Rep. 820; *Schneider v. Detroit,* 72 Mich. 240 (40 N. W. Rep. 329).

In *Ashley v. Port Huron, supra,* this Court say:

" The right of an individual to the occupation and enjoyment of his premises is exclusive, and the public authorities have no more liberty to trespass upon it than has a private individual. * * * A municipal charter never gives, and never could give, authority to appropriate the freehold of a citizen without compensation, whether it be done through an actual taking of it for streets or buildings, or by flooding it, so as to interfere with the owner's possession."

And in *Booming Co. v. Jarvis, supra,* it was said:

" That the flowing of lands against the owner's consent, and without compensation, is a taking of his property in violation of that provision of our Constitution, * * * is a proposition which seems to me so self-evident as hardly to admit of illustration by any example which can be made clearer, and which therefore can hardly need the support of authorities."

See, also, *Davies v. City of East Saginaw*, 66 Mich. 37 (32 N. W. Rep. 919). What it is claimed the city has a right to do here is not a mere temporary use of the lands of complainant, but is a continuing use and occupancy of her premises. And no one can claim that it would not amount to a trespass. It deprives her of its use for all time that such embankment is permitted to remain. In addition to this, from the situation and surroundings of her premises, with hills upon two sides, and the railroad track upon the third, this embankment, if permitted to be erected and maintained, would effectually cut off all approach to it from any direction, and absolutely destroy its use, and render it without value for residence purposes, and of little value for any purpose whatever.

It is contended, however, by counsel for defendants, that, while this may be a subject of an action for trespass, it is not a cause for an injunction; that public works cannot be stopped by injunction, where the facts disclosed and relied upon show an adequate remedy at law; that the complaint is of a threatened trespass upon complainant's premises, and nothing else; and this, not by a direct act of the contractors or of the public authorities, but as an incident to the improvement of the street proposed to be made. The facts disclosed by this record show something more than a mere trespass threatened upon complainant's premises. If the defendants are permitted to go forward as they claim the legal right to do, it amounts to a destruction of valuable property rights, the invasion without legal right of the home of complainant, and the taking of the property without compensation. This constitutionally they cannot do. The common council of Grand Rapids or the board of public works have no power to determine that this property is necessary for public use. The Constitution points out the tribunal to

determine this question.   Under such circumstances, the law does not require a party to wait until his property is completely destroyed, and then turn him over to his action of trespass to recover his damages, but . equity, when appealed to, will interfere to restrain the threatened destruction.     In *Koopman v. Blodgett*, 70 Mich. 610 (38 N. W. Rep. 649), this Court granted an injunction restraining the interference with the natural flow of water in Clam river.     Mr. Justice CAMPBELL, in that case, says:

" That defendants have given frequent occasion for damage suits is obvious.     But it is equally obvious that such a remedy is inadequate.     It has always been settled that the owner of realty is entitled to the aid of equity to prevent permanent and continually recurring injuries to the enjoyment of his property.     To deprive him of such enjoyment is to deprive him of the property itself, wholly or to the extent of the mischief.     Neither can it be allowed for wrong-doers to rely on their own wrong to change or lessen his means of redress.     When they do mischief it is their own fault if they render a stringent remedy necessary, and they, and not the party, must take the consequences."

The principle is also laid down in *Stone v. Lumber Co.*, 59 Mich. 24 (26 N. W. Rep. 216), and an injunction was granted.     In *Ryan v. Brown*, 18 Mich. 212, the Court said:

" Where a trespass is calculated to do permanent damage to the freehold, the jurisdiction has always been exercised, and the circumstances of this case show that injury must be very serious, if permitted."

From the circumstances shown by this record, we are of opinion that the court below properly allowed the injunction to issue.

The decree of the court below must be affirmed, and the injunction made perpetual.     Complainant will recover her costs.

The other Justices concurred.