THOMAS LOWERY

*v.*

THE CITY OF PEKIN *et al.*

*Opinion filed June 21, 1900—Rehearing denied October 4, 1900.*

1. INJUNCTION—*when injunction is a proper remedy against city.* In-
junction is a proper remedy where a municipal corporation, under
claim or color of right, is unlawfully attempting to take the pri-
vate property of a citizen.

2. SAME—*equity may enjoin obstruction of easement.* One holding an
easement of right of way under a lease from a city may invoke the
aid of equity to enjoin the city from appropriating an embankment
built by him on such right of way, and making it a part of a public
highway, without compensating him for the injury sustained.

WRIT OF ERROR to the Circuit Court of Peoria county;
the Hon. L. D. PUTERBAUGH, Judge, presiding.

The original bill in this case was filed on July 19, 1898.
A demurrer was filed and sustained to the original bill,
and leave was granted to the complainant therein to
amend the bill. Accordingly, on January 11, 1899, a sup-
plemental and amended bill was filed. To this supple-
mental and amended bill a general demurrer was filed;
and, the demurrer having been sustained, the bill was

dismissed. The present writ of error is sued out from this court for reversing the decree of the circuit court, which dismissed the bill at complainant's cost for want of equity.

Thomas Lowery, plaintiff in error here and the complainant who filed the bill in the court below, alleges that he is the owner of three hundred acres of land in Hollis township, Peoria county, underlying which is a large body of coal; that in the center of said tract he has a coal mining shaft and tenement houses connected therewith for the use of the miners, the premises being known as the "Orchard Mines;" that he derived his title to the land by deed from one Peter V. Schenck on January 1, 1874, and has had open and exclusive possession of the premises, including the shafts and grounds, ever since that date; that Schenck had possession thereof for many years prior to that date; that the shaft is located about one and a half miles west of the Illinois river, directly opposite the city of Pekin in Tazewell county, and at the foot of the bluffs on the westerly side of said river; that the intervening grounds between the shaft and the Illinois river were then and still are low, marshy and wet lands, not susceptible of cultivation, or being used for driving over the same for more than eight months in each year; that, while the mines were operated by Schenck, there was a large demand for coal to supply steamboats on the Illinois river; and, for the purpose of furnishing such supply and supplying coal to the inhabitants of Pekin for fuel, Schenck formulated and carried out the design of building an embankment and railway across said Illinois river bottoms to the westerly bank of the Illinois river opposite Pekin, and of erecting suitable docks there from which to supply coal to the boats; that, for the greater part of the distance between said river and the Orchard mines, Schenck owned the land proposed to be covered by the embankment in his own right, and, for the balance of the distance, the lands were owned

and possessed by the city of Pekin; that there then existed opposite Pekin a ferry crossing the river at about the center of the city, and from the westerly side of the river there was a wagon road running thence to the north and south public road at Orchard mines; that the wagon road was not then worked or kept up, and had no certain and well defined location, and Lowery does not know whether the same was ever located and laid out as provided by law; that the ferry was then owned by the city, and by it leased for a term of years to J. A. and T. J. McGrew, who operated it and charged tollage therefor; that the erection of the proposed embankment and railway was regarded as a great benefit and advantage to the city of Pekin.

The bill further alleges that, on March 7, 1870, the city, in order to induce Schenck to erect said railway, made a contract with him in these words, viz.: "Whereas, Peter V. Schenck desires to build a railroad on the right of way adjoining to and upon the north side of the wagon road built on the west side of the Illinois river, and from said Illinois river to the bluffs on the west side of said river, so as to connect the coal bank of the said Peter V. Schenck with the Illinois river by rail, and to erect suitable docks and fixtures for the reception, handling and shipment of coal therefrom, and desires to lay said railroad across and over the land, and build said docks on the land of the city of Pekin at the margin of said river; and whereas, it is deemed greatly to the advantage of said city and the inhabitants thereof to have said improvements built as aforesaid: Now, therefore, in consideration of the premises and to encourage the easy completion of said roads and docks as aforesaid, the city of Pekin has demised and leased to the said Peter V. Schenck, his heirs and assigns, all of the right, title and interest of said city in and to said right of way on and over said Illinois river bottom from the west bank of said river to the said bluff on the north side of the wagon road

across said bottom, as now constructed, and so much of the land along the margin of said Illinois river and on the west side thereof as is contained in the following boundaries, to-wit: (Here follows a description of eight acres of ground.) *Provided*, that in constructing said railroad and docks, and in the use of said premises, said Peter V. Schenck is to so use and occupy the same as not to materially affect injuriously the said wagon road for ordinary travel, and not to obstruct said ferry or ferry landing at the place that said ferry boat is now landing at the foot of said road now constructed across said bottom. To have and to hold the same to him, the said Peter V. Schenck, his heirs and assigns, for the term of ninety-nine years, he and they paying taxes on so much of said land as is contained in this lease, and paying the expenses of the surveying said land and locating the same, and of preparing this lease. And it is understood that said lease is not adverse to the lease of the city of the ferry franchises and the contract of said wagon road to one J. A. and T. J. McGrew, but is with their consent and approbation. And it is further understood that said railroad and dock are to be built in a reasonable time, from this date, all things considered; and if not so built in said reasonable time, then the city assumes the right to act on this lease forfeited to the city;" which lease was signed by the city by a duly authorized committee consisting of five persons.

The bill further alleges that Schenck, in compliance with the terms of the lease, surveyed and located a right of way over said Illinois river bottom in a straight direction, and all on the northerly side of said wagon road, as then located and used, so as not to interfere with said wagon road at any point or place, and built a large embankment of earth and timber of the average height of six to eight feet, and of a width at the surface of about seven feet, and placed thereon ties and laid down rails, so as to make a continuous railway from said Orchard

mines to the westerly bank of the Illinois river; and upon said eight-acre tract, he placed a dump and suitable docks, so as to deliver and store at said docks coal from his mines, and procured cars and motor power to convey the cars to said dump from his shaft; that Schenck in the construction of said works expended the sum of about $18,000; that the wagon road at that time was upon the natural surface of the ground and, during a greater part of the year, was under water and impassable, but, after the building of the embankment and by reason of the dam thereby created, was greatly improved and capable of use for a greater portion of the time than it could be used theretofore; that the embankment and railroad were completed within a reasonable time after the execution of the lease and in such a manner that the road and ferry were wholly unobstructed or injured, but were greatly benefited thereby; that, while he owned the said shaft and premises, Schenck delivered coal by means of said railroad to said docks and maintained the embankment and railroad at his own expense; that, on January 1, 1874, Schenck sold the grounds and premises, with the right of way and railroad and the leasehold interest at the coal landing and dumps and all the cars and motors, to Lowery; that Lowery then took possession and continued to mine coal at the mines and to use the railroad, and to carry coal across said Illinois bottom to the docks for a number of years thereafter; that, about the year 1883, the demand for coal by steamboats became less and was supplied mainly from other docks, and the Illinois river trade became lost to Lowery, and, by reason of the fact that a large tollage was demanded for crossing of teams at the ferry, Lowery was not able to supply coal to the people of Pekin at the same price at which it could be delivered to them from other mines, and was compelled to cease the operation of his railroad and the use of his docks, and the same were suffered to lie idle owing to the lack of demand for coal; that about the year 18—

during his absence from Illinois, some persons to him unknown, claiming to act, as he is informed and believes under the authority of the city of Pekin, raised by embankment the wagon road on the south side of Lowery's railroad to the same height as the railroad, and, for that purpose, used part and parcel of his embankment and grade; that, in such raising of said wagon road embankment, the same was so negligently done that part of the railroad tracks and ties on the surface of Lowery's embankment was covered up or torn down and destroyed, and, he having then no use for said railroad and being unable to use the same, took up the remaining iron therefrom to prevent its being lost or carried away; that the surface of said wagon road has since been maintained at the same height as Lowery's embankment, and he, having no present use therefor, has permitted his embankment and the surface of said right of way to be used at places by teams passing along and over said wagon road, but with full notice to said city and the authorities in charge of said road, that said embankment, and so much of the surface thereof as is necessary for the passage of cars over the same, is his property; that the wagon road and embankment are entirely without the limits of the city of Pekin and in a different county from that in which the city is located; that said city has, since he ceased to operate his railroad, placed a free bridge over the river at the point aforesaid, and he charges that the city still maintains said bridge as a free bridge, and has asserted and claims ownership and supervision over said wagon road leading from said bridge to the public road at Orchard mines; that, for about one-third of said distance, the grade and embankment of Lowery are located upon property, which was owned in fee by Schenck, and was conveyed to Lowery, and the city never had and has not now any title thereto or right of way over and across the same, and the teams have been permitted to pass over the same freely by the license of said Lowery, and be-

cause he has no present use therefor that would be interfered with by said passage.

The bill further alleges that Lowery has the right to use and dispose of said embankment and right of way as he sees fit, and that said Schenck before him and he have observed and carried out the provisions of said lease at all times; that, as he is informed and believes, the city of Pekin has recently, without notice to Lowery or any right or authority from him, given out that it is about to grade up said wagon road for a distance of about six thousand feet from the westerly end of said bridge to Orchard mines, and to fill up said grade in a permanent and substantial manner with crushed stone and gravel, and has caused plans and specifications to be made for the construction of said permanent wagon road, so as to give it a width of sixteen feet on the surface; that the city has let the contract to construct said wagon road in accordance with said specifications, to one James Dunbar who is about to proceed with the construction thereof; that Dunbar, under the advice of the city, intends to utilize the entire grade and embankment of Lowery across said bottom, instead of keeping south of said embankment and leaving the same for the use of Lowery under his lease and ownership in fee; that the city intends further to utilize the same, so far as it extends over Lowery's land; that the city has never notified Lowery of such intended use, or attempted to purchase said grade from him, or to take the same under the Eminent Domain act of Illinois, but proposes to do so forcibly and against his will and without allowing him any compensation; that the city of Pekin and Dunbar will, unless enjoined, encroach upon and take absolute possession and control of said embankment, grade and right of way of said Lowery and convert the same to its own use or the use of the public for an approach to said bridge, and hold and use the same as they may see fit, and thus prevent the use thereof by Lowery, and prevent him from selling or dis-

posing of same to his own use; that thereby the purpose of said embankment will be entirely lost to Lowery, and he will be deprived of his property without due process of law and without compensation.

The bill prays that, because Lowery has no adequate remedy at law and no power to resist the invasion of said city and of said Dunbar, they may be enjoined from taking possession of said embankment and from digging up, grading, leveling, macadamizing or permanently improving the north side of said embankment of the width of eight feet, or from disturbing the surface thereof in any way; and, in case the city has taken and used any part thereof, he prays that the city and said Dunbar may be compelled to abandon the same, and that Lowery's damages may be ascertained under the law of eminent domain, and that the city may be required to pay such damages.

The supplemental and amended bill alleges that, since the filing of the original bill and during its pendency, the defendants have graded, macadamized and improved the said wagon road between the bridge landing and the north and south highway at the mines, and, in so doing, have included in said wagon road the embankment and right of way of Lowery, so that no part thereof remains save what is included in said wagon road as the same is now constructed, and, on that portion of the line where Lowery owns the fee, they have taken the whole of said embankment owned by him; that the city of Pekin has thrown the same open to the public as a public highway, and the same is being so used by the public in traveling from said free bridge westward over the river bottom; that this has been done by the defendants against the will of Lowery and with full knowledge by them of his rights; that he (Lowery) has no adequate remedy at law for the wrongful taking possession and use of said grade and embankment, and of said property of which he owns the fee; that his said grade and land are so situated,

that he cannot enclose the same and retain possession thereof, so as to keep the public from going upon the same, and that he cannot now use the same to carry coal from said shaft to the river without great loss, owing to the fact that there is no present market value for coal at the river; that said property has at present prospective value and, within the time named in the lease, the said embankment grade and privileges therein contained will be of great value to Lowery, his heirs or assigns.

The bill further alleges that said city of Pekin, well knowing that Lowery has been unable to utilize the said right of way, grade and embankment for fifteen years or more last past, and that he cannot now utilize the same or recover substantial damages for said trespass, has taken adverse possession thereof for the use of the public, and has caused the same to be graded and improved, and threatens that it will continue to use and control the same, until Lowery is prevented from recovering his possession and from further using said embankment; that he is in danger of losing his property, and all the money he has expended thereon, by reason of limitations, unless the defendants are compelled to remove the improvements, rock, stone and material placed by it on said right of way, or to acknowledge his rights by the exercise of the right of eminent domain, or by agreement with him; that the defendants refuse to acknowledge that he has any right in or to said grade and embankment.

The amended and supplemental bill prays that, inasmuch as Lowery has no adequate remedy at law, and for the reason that his title to said right of way, embankment, grade and premises is in peril of being lost to him by such wrongful acts and by virtue of the Limitation law of the State, a writ of mandatory injunction may issue against the defendants requiring them to remove from said embankment all stone, macadam, gravel and other material placed thereon, in order to make the same suitable for the traveling public to use as a highway,

and, that unless the defendants remove the same, that he be permitted to remove the same, and that the city be enjoined from using his embankment and grade, or casting any cloud upon his title to the same, without first resorting to due process of law.

JACK & TICHENOR, and N. W. GREEN, for plaintiff in error.

HENRY CLAY, City Attorney, and PRETTYMAN & VELDE, for defendants in error.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

A wagon road existed, running westward from the west side of the Illinois river opposite the city of Pekin to a public road running north and south at the Orchard mines, owned by the plaintiff in error. An embankment was constructed by Schenck, the grantor of the plaintiff in error, along the north side of this wagon road westward from the bridge over the Illinois river to the mines in question. The right of way, upon which this embankment was built, was upon ground, two-thirds of which was owned by the city of Pekin, and one-third of which was owned by the plaintiff in error, Lowery. Lowery, by the conveyance from Schenck, acquired the title to the right of way over the ground owned by the city through a lease for ninety-nine years made by the city to Schenck in 1870.

The city of Pekin, according to the allegations of the bill, has appropriated the embankment owned by plaintiff in error upon the right of way north of the wagon road, and made it a part of the public highway owned by the city. The embankment, as built by Schenck and subsequently conveyed to Lowery, was from six to eight feet in height and seven feet wide upon the top thereof. A railroad was constructed upon the embankment, run-

ning from the mines to the docks on the river, and was
used for carrying coal by Lowery for about nine years.
Originally, the wagon road owned by the city ran along
on the south side of the embankment at the foot of it,
and upon the surface of the ground. The city raised the
wagon road by building another embankment alongside
of the one constructed by Schenck, so that the top sur-
face of the two embankments together was sixteen feet
wide. The city thus has a public highway running from
the bridge to the north and south public road at the
mines, which is sixteen feet on the top thereof, and one-
half of which consists of the embankment belonging to
Lowery. The demurrer admits all the allegations of the
bill to be true. If these allegations are true, the city of
Pekin has appropriated so much of the right of way and
embankment of Lowery as belonged to him, and as was
constructed by his grantor, without paying any compen-
sation therefor. The city itself was Lowery's lessor, as
it leased to him two-thirds of the right of way for the
express purpose of enabling him to build railroad tracks
thereon, and to build docks at the river, with which those
railroad tracks should connect.

We can see no reason why the city should thus ap-
propriate the property of a private citizen without pay-
ing him therefor. He had a right of way over property
of the city itself through a lease for ninety-nine years,
which the city gave him. This easement thus granted
to him could not be interfered with by the city without
violating the terms of its own agreement with him, as
embodied in the lease.

It is said, that the city cannot be enjoined from thus
using and holding the possession of the property of plain-
tiff in error for the purposes of a public highway upon the
alleged ground that plaintiff in error, if he has suffered
any wrong, has a remedy at law, either in ejectment for
the recovery of the possession of his property, or in tres-
pass to recover damages thereto. But this is not a case,

where it is sought to enjoin a simple trespass. This is a case where a municipality, under claim of right, is unlawfully trying to take the property of a private citizen. It is well settled, that injunction is a proper remedy where cities or public officers, under color of power or claim of right, are illegally attempting to injure, or take the property, or impair the rights, of a citizen. (*Smith* v. *Bangs,* 15 Ill. 399; *City of Peoria* v. *Johnston,* 56 id. 45; *Carter* v. *City of Chicago,* 57 id. 283; *Bryan* v. *City of East St. Louis,* 12 Ill. App. 390).

The injury here complained of is one of a continuing or permanent nature, for which an action at law does not afford a complete and adequate remedy. (*Carpenter* v. *Capital Electric Co.* 178 Ill. 29; *Sterling's Appeal,* 111 Pa. St. 35). The plaintiff in error has here a right of way over certain property belonging to the city, that is to say, he has an easement in certain real estate, and the action of the city, in taking possession of his embankment and making it a part of the public highway, obstructs such easement, and, therefore, equity has jurisdiction to enjoin such obstruction, inasmuch as the injured party has no adequate remedy at law. (*McCann* v. *Day,* 57 Ill. 101; *Carpenter* v. *Capital Electric Co. supra*). It is well settled that, where a right of way is obstructed or an easement is interfered with, injunction will lie. (*Chicago General Railway Co.* v. *Chicago, Burlington and Quincy Railroad Co.* 181 Ill. 605; *O'Connell* v. *Chicago Terminal Transfer Railroad Co.* 184 id. 308; *Newell* v. *Sass,* 142 id. 104).

For the reasons above stated, we are of the opinion that the circuit court erred in sustaining the demurrer to the bill and dismissing the same for want of equity.

Accordingly, the decree of the circuit court is reversed, and the cause is remanded to that court with instructions to proceed in accordance with the views herein expressed.

*Reversed and remanded.*