THOMAS LOWERY

*v.*

THE CITY OF PEKIN *et al.*

*Opinion filed June 23, 1904.*

ESTOPPEL—*when a city is not estopped to raise question of ultra vires.* A lease by a city granting the exclusive use of a portion of a highway for a purpose impairing its use as a highway is *ultra vires*, and the city, having re-possessed itself of the land, is not estopped to raise the defense of *ultra vires* to a bill for injunction based upon complainant's alleged rights under the lease.

APPEAL from the Circuit Court of Peoria county; the Hon. N. E. WORTHINGTON, Judge, presiding.

JACK, IRWIN, JACK & DANFORTH, for appellant.

CHARLES SCHAEFER, City Attorney, and PRETTYMAN & VELDE, for appellees.

Mr. CHIEF JUSTICE RICKS delivered the opinion of the court:

The original bill in this case was filed on July 19, 1898, and a supplemental and amended bill thereto filed January 11, 1899. To this supplemental and amended bill a general demurrer was filed, and the demurrer having been sustained the bill was dismissed and a writ of error sued out from this court, our opinion in that

case being reported in 186 Ill. 387, to which reference is made for a complete statement of the bill. The only question on the demurrer was the sufficiency of the bill, and we having held that the bill stated a good cause of action, the case was reversed and remanded. The cause being re-docketed in the circuit court of Peoria county, the defendants obtained leave and filed their answers denying each of the averments of the bill and amended bill, and setting up that the right of way upon which the Lowery grade was built was a public highway, and was given to the city of Peoria by the State of Illinois in the year 1853 by an act of the legislature, to be used as a public highway, and that the same has been used as a public highway for more than fifteen years prior to the filing of the original bill in this case, and that the city accepted said grant and located and operated said road-way and improved the same for its entire width and length, and has continued to operate and possess the same from 1853 to the present time, and denying that the said city of Pekin had the right to grant to Schenck the right to build the embankment on the public highway. Replication was filed to the answers and the cause referred to the master to take testimony and report both conclusions of fact and law.

The only questions presented are upon the answers, being; first, whether the road was given by the State and used by the city of Pekin as a public highway; second, whether the city of Pekin had any authority, under the law, to authorize Schenck or Lowery to use any portion of the highway for their private business; third, whether the public and the city had not used the same adversely to said Lowery for more than fifteen years prior to the filing of the bill; fourth, whether the bill should not have been dismissed on the ground of *laches.*

Upon a hearing before the master the master found in favor of the city of Pekin and appellee Dunbar. Appellant filed objections to the report of the master, which

were overruled, and upon exception thereto the circuit court confirmed the findings of the master and dismissed the bill, and this appeal is prosecuted by appellant.

The findings of fact incorporated in the master's report to the court are full and complete, and we think, after a careful examination of the record, are sustained by the evidence, which findings of fact, as well as of law, by the master, are as follows:

"That in virtue of an act of the General Assembly passed February, 1853, the State of Illinois granted to the city of Pekin a strip of ground one hundred feet in width across the Illinois river bottoms, opposite the city, for the use of a road, and the city of Pekin was by said act empowered to build and construct an embankment and plank road upon the strip across said bottoms; that about the time of said grant a road was constructed by the city of Pekin, partially by embankment and partly by planking, upon said strip across said bottoms, and a public road has been maintained there since that time; that on March 7, 1870, Peter V. Schenck, who was then the owner of the coal mines known as 'Orchard mines,' and which were situated at the west end of the strip of ground mentioned, deeming it advantageous and profitable, in the operation of his coal mines, to carry the coal directly to the river from the mine, obtained a lease for himself, his heirs and assigns, from the city of Pekin, for ninety-nine years, of that part of the strip of ground in question which was situated on the north side of and adjoining the wagon road built by the city of Pekin, to build and operate a railroad thereon from said coal bank to the Illinois river; also a strip of ground along the margin of the Illinois river described by metes and bounds in said lease, to be used as a dumping place and dock for the coal carried down to the river bank upon this railroad. The lease contains the condition, that in the use of the premises said Peter V. Schenck is not to materially injure said wagon road for ordinary travel,

210—37

and is not to obstruct the ferry or ferry landing at the foot of said wagon road.

"Having obtained the lease from the city of Pekin, Peter V. Schenck constructed an embankment or grade from six to eight feet high, interspersed with trestle-work, upon the strip in question on the northerly side of the public road mentioned, from his coal bank to the river bank. On the top of this embankment or grade, and upon the trestle-work, he laid iron rails. By this means he ran his coal cars, which were loaded in the mines, to the dump and dock which was constructed at the river, where the coal was re-loaded upon steamboats running on the Illinois river or put into wagons and hauled across to the city of Pekin. Schenck used the railroad and grade mentioned in the operation of his mines until he sold out to the complainant.

"On January 1, 1874, the complainant, Thomas Lowery, by warranty deed from Peter V. Schenck and wife, became the owner of the Orchard mines, the deed also conveying to him 'the right of way and railroad track from Orchard mines to the river, opposite Pekin, Illinois, together with all leasehold interest owned by the party of the first part at the coal landing and dumps opposite Pekin, on the Illinois river, and all houses and improvements, of all kinds, on said premises.' The track and grade mentioned was used but a few years after the complainant became the owner of Orchard mines. The use of the track and grade having ceased to be profitable in the operation of the mines, was abandoned and the track allowed to go into gradual decay. The city of Pekin thereupon, in 1882, with the aid and co-operation of some of the people in the vicinity, raised the grade of the wagon road to the level of the grade of the railroad, took possession of the railroad grade, improved it and made it a part of the public road. The complainant made some objection at this time, but apparently more for the reason that many of his rails and ties had been

thrown to one side, where they were covered with mud and water. He employed counsel to cómmence proceedings. It does not appear, however, that any proceedings were commenced or means adopted to dispossess the city of Pekin nor to prevent the public from using the grade in question as a public highway. The city of Pekin has had actual and complete possession of the grade in question, and the citizens of Pekin and public generally have used said grade as a part of the public highway, without interference or interruption, since the year 1882, and for more than fifteen years prior to the commencement of this suit. The city of Pekin and some of its citizens, and the people of the vicinity who were using the road in question as a public highway, expended considerable sums of money, from time to time, and much time and labor, improving it, and gradually put it in proper condition for travel all the year round. At the time of the commencement of this suit a committee of citizens of Pekin had raised a large sum of money to put a top dressing of macadam on portions of the road to still further improve it, and this work of macadamizing was done in the interim between the filing of the original and supplemental bills herein.

"The master finds the law to be as follows: That the lease from the city of Pekin to Peter V. Schenck was *ultra vires* and void; that the city of Pekin holds the strip of ground in question solely for the use of a public road, and therefore had no power to permanently divert any part thereof to the use, benefit and control of pri-. vate persons for private enterprises and business; that the city of Pekin had the legal right to re-possess itself of that part of the strip of ground in question which had been leased to said Schenck, for the purpose of making it a part of the public road; that complainant's right of action, if any he had, against the city of Pekin in the premises was barred by limitation and lost by *laches* before the filing of the original bill in this case. The master

therefore finds that complainant is not entitled to the relief prayed for in his original and supplemental bills."

The master's report being adverse to the contentions of appellant on each of the above propositions set forth, and being, as we think, sustained by the facts in the case, it was not error for the trial court to enter its decree dismissing the bill.

It is argued by appellant that the land over which the road lies was originally swamp land, and as such belonged to the county of Peoria and not to the State, and that the State had no power, by act of assembly or otherwise, to grant to the city of Pekin the right of way for a road. We cannot see how this contention, if supported by the evidence, could avail appellant. If the city of Pekin obtained no rights from the State it would seem to follow that it could grant no right to appellant's grantor. The master finds, and the evidence abundantly supports the finding, that the public had had and used the roadway since 1853, and a grant from proper authority, from such long use, would be implied. If, however, the right was in Peoria county, appellant stands in no such relation to the county as to represent its rights, and it is not complaining here. Appellant, in his bill, relies upon the lease from the city of Pekin to Schenck, his grantor, and he is in no position to insist that he has rights under a lease and at the same time to insist that the lease was void. He cannot, in his bill, predicate his right upon the lease, and in his argument insist that the lease is void on the ground that the city of Pekin had no title to the leased premises.

The act of 1853 in apt and unmistakable language conferred power upon the city of Pekin to construct the road in controversy, and of the width of one hundred feet, and grants the right of way over whatever lands the State owned along the route of the road. It also empowered the city to issue bonds to enable it to carry out the undertaking. It did construct a roadway, in the

nature of a bridge or trestle, substantially the entire distance of the road now in controversy, and issued bonds to pay for the same, and we regard these acts of the city as sufficient evidence of the acceptance by it of the provisions of the act. When the bridge or trestle became so affected with age that it was condemned, the city then converted the road from a bridge or trestle to a graded roadway. The act of leasing to appellant a part of the land covered by the roadway shows that the city was assuming, at least, to exercise dominion over the right of way which the act purported to grant to it. The act contained the provision that the city should have power "to make such rules and regulations for the management and preservation of the same, not contrary to the laws of Illinois, as said city shall deem best." (Private Acts of 1853, p. 578.) By the laws of Illinois then and ever since existing, the authorities in charge of public highways were prohibited from granting to any private individual the exclusive use or control of any part of the highway, or from allowing the same to be devoted to any private or public use that would materially impair its usefulness as a highway. Appellant's grantor, Schenck, and appellant, were bound to take notice of these limitations upon the powers of the city of Pekin in relation to this highway. What the city had no power to do it cannot be estopped to deny that it did. In other words, the city had no power to grant to Schenck the exclusive use of the highway, or the part of it now claimed, for ninety-nine years or any other term, and having again re-possessed itself of the disputed tract it is not estopped to assert that the lease was *ultra vires.* It did not hold this road, and the power to construct the same was not conferred upon it in its private capacity or for its private use but for a public use, and toward the public, in relation to this highway, the city stood as trustee. So far as relates to the land not owned by appellant and traversed by this road he is not concerned and cannot raise the

question of title, and so far as relates to that part of the road that enters his land, the evidence shows the right of way was granted by one Stackpole, a former owner.

The record discloses that in 1881 appellant, having for a number of years previous ceased to use that portion of the highway now claimed by him, and the same having gone into decay as a tramway or railroad, declared to Cooper, the then mayor of the city of Pekin, that he was done with the grade and would never use it again; and when the city did take possession of the disputed portion of the road in 1882, appellant removed the track and brought suit against the city, which was abandoned, and nothing further was done by the appellant by way of asserting his rights until the original bill in this cause was filed, in 1898. When the city took possession, in 1882, $10,000 was expended in bringing the grade of the old road and the grade formerly made by appellant to a uniform and single grade for a road. During all of said time between 1882 and 1898 the tract in question was used and kept up by the public as and for a highway.

After a careful review of this record we see no reason to disturb the findings of the master or the decree of the circuit court, and the decree is accordingly affirmed.

*Decree affirmed.*