## BENJAMIN G. ELSER

### *v.*

### THE VILLAGE OF GROSS POINT *et al.*

*Opinion filed October 23, 1906.*

1. INJUNCTION—*when court may dissolve injunction and dismiss bill.* If, upon the face of a bill for injunction and no other relief, no sufficient ground for equitable relief appears, the court may, on motion, dissolve the injunction and dismiss the bill.

2. CHAMPERTY—*what is not evidence of champerty or maintenance.* In a case where a common right of many persons is involved, participation of any party having an interest in the outcome of the litigation is not evidence of champerty or maintenance.

3. SAME—*when fact that litigation grows out of a champertous contract is no defense.* The fact that litigation grows out of a champertous contract is no defense in a collateral proceeding, and

the question can be raised only between the parties to the champertous contract and those in privity with them.

4. WATERS—*dominant owner cannot increase burden upon servient estate.* One having an easement of drainage over the land of another has no right to increase the burden of it upon the servient estate, and if he attempts to collect water in an artificial channel and cast it upon the servient estate in undue and unnatural quantities, contrary to its natural course, a court of equity will interpose to prevent the act.

5. SAME—*equity has jurisdiction to prevent threatened injury to servient estate.* A court of equity will take cognizance of the facts that in certain seasons of the year, in certain localities, there are heavy rainfalls and consequent liability to freshets; and if a wrongful act by the owner of the dominant estate is threatened, which, in connection with such facts, will injuriously affect the rights of the servient owner, it will interfere to anticipate and prevent the threatened injury.

6. SAME—*of right of a municipal corporation to divert surface waters.* A municipal corporation has no greater right than a natural person to divert surface waters in large quantities by an artificial channel upon the land of another, except that it may do so in the exercise of its powers of eminent domain, upon making just compensation, as required by the constitution.

7. EQUITY—*when party cannot be relegated to action at law for damages.* While a court of equity will not take jurisdiction, at the suit of a person whose property is not actually taken, to enjoin the making of a public improvement, yet if the threatened act involves an actual taking, the expropriation will be enjoined until the damages are ascertained and paid in the manner provided by law.

APPEAL from the Circuit Court of Cook county; the Hon. J. W. MACK, Judge, presiding.

On November 8, 1905, Benjamin G. Elser filed his bill in the circuit court of Cook county praying for an injunction restraining the village of Gross Point and Joseph Braun from making certain contemplated changes in a culvert or waterway, which it is alleged would injure and damage Elser's land.

Elser was the owner in fee of about six acres of land lying within the corporate limits of Gross Point, fronting on a highway known as "Church road," and he also claimed to

be the owner of the fee in the land occupied by the Church road to the center thereof. Church road is a public street or highway running north and south on the top of a ridge parallel with the western shore of Lake Michigan. The land east of this ridge slopes toward the lake shore, and west of it the slope is westward for about a thousand feet, where it reaches Skokie swamp. This swamp is a body of low, marshy land about two miles in width and from twenty to thirty miles in length. During the spring of the year and in seasons of heavy rainfall Skokie swamp becomes a vast body of water, which is cut off from Lake Michigan by the ridge above described. The natural drainage for Skokie swamp is into Chicago river, and none of the water from this swamp flowed into Lake Michigan in a state of nature. The village of Gross Point is an incorporated village of some twelve or fifteen hundred inhabitants and is located on the western slope of the dividing ridge, while the villages of Kenilworth and Wilmette, also incorporated, are located between the ridge and Lake Michigan.

In 1867, in pursuance of an act of the legislature which was afterwards declared unconstitutional, (*Hessler* v. *Drainage Comrs.* 53 Ill. 105,) a drainage ditch was cut from the west toward Lake Michigan, passing through the ridge above described, thus constituting an artificial outlet for a part of the water from Skokie swamp to Lake Michigan. The expense of cutting this ditch was borne by the adjacent land owners, as provided by the act of the legislature of February 15, 1855, above referred to. At the time the ditch was constructed it was an open waterway, and at the point where it crossed the ridge it was about ten feet wide at the top and twenty feet deep, with sloping sides. A bridge was constructed on Church road over the open ditch. The ditch remained as originally constructed, with the acquiescence of the land owners on both sides of it, including the predecessors in title of Elser, until the year 1883, when that portion of it that crosses Church road was re-constructed by the vil-

lage of Gross Point by putting in a circular stone-and-brick culvert four feet in diameter on the inside. This culvert was about one hundred feet in length, the bottom of which was placed flush with the bottom of the original ditch and the opening above the culvert was filled in so that the bridge was no longer needed. The east end of the culvert extended about twenty feet beyond the east line of the highway, on the land now owned by Elser. It is charged in the bill that the water, after passing out of the east end of the culvert, flows down through an open ditch on the land of Elser for a considerable distance on its way to the lake. There has been no change in the culvert since 1883, and none in the open ditch east or west of it except that which has been produced by the flowage of the water through the ditch. It is averred in the bill that the village of Gross Point has not made any claim or asserted any rights in the ditch except the right to have the water flow through the culvert as re-constructed by the said village in 1883, until the proposed change hereinafter described was projected, in 1904.

It is charged in the bill, and not controverted, that in November, 1904, the village of Gross Point determined to re-construct said culvert, and that a contract for this purpose had been let by the said village to Joseph Braun, and that the said Braun, in pursuance of this contract, was threatening to enter upon Elser's land and remove said culvert and place another in its stead, much larger than the present one. The specifications in Braun's contract with the village show that the new culvert was to consist of a concrete-and-brick arched culvert one hundred feet in length, the footings of the retaining walls to be five feet below the bottom of the present brick culvert, and that the side walls of said arched culvert were to be ten feet high and six feet from side to side, the arch above to be back-filled and Church road to be restored to its present condition by the contractor. The contract also provided that retaining walls were to be built one hundred and seventy-five feet east and one hundred and seventy-five feet

west, with a six-foot space between them for the water to
pass through.

.It is alleged in the bill that the ordinary water level in
Skokie swamp is lower than the bottom of the culvert in its
present condition, and that the effect of lowering the culvert
and leaving it with a dirt bottom will finally cause practically
all of the water in Skokie swamp to pass through said cul-
vert and onto the land of Elser and other property owners
in the village of Kenilworth. It is charged that at times of
heavy rainfall the waters of Skokie swamp rise above the
top of the present culvert, and so remain until lowered by the
discharge of the water through said culvert. It is also con-
tended by Elser that if the culvert is enlarged in the manner
contemplated by the contract with Braun, the effect of it will
be to discharge the water from Skokie swamp though said
culvert in such way as to overflow the ditch eastward from
the culvert, and thereby damage and despoil the lands of
Elser and others owning property along said ditch.

Elser purchased the land in question in 1894 from Cath-
erine Abbink, and her grantor purchased it from Annie M.
Reinart in 1892, and she purchased the land in 1886 from
Peter Reinart, all of said conveyances being in good faith
and for valuable consideration, without any notice of any
claim of the village of Gross Point, or property owners west
of the ridge, of any greater right than was indicated by the
culvert that was then in use.

A temporary injunction having been awarded, the village
of Gross Point and Braun appeared and filed a motion to dis-
solve said injunction on the ground that there was no equity
in the bill, and that the suit was the result of a champertous
contract between Elser and Joseph Sears, and that there was
collusion and fraud in bringing the suit. Upon the hearing
of the motion to dissolve, the defendants introduced evidence
for the purpose of establishing the second ground relied upon
for the dissolution of the injunction. To sustain the charge
of champerty, collusion and fraud, the records in two other

suits, which concern more or. less directly 'this proposed change in the ditch, were introduced. One of these cases was that of the village of Kenilworth and certain property owners along the line of the said ditch, among them Joseph Sears, against the village of Gross Point, which was circuit court general No. 266,450. The bill in this case was substantially the same as in the case at bar, and the relief therein prayed for was a general injunction against the village of Gross Point to prevent it from any way interfering with the said culvert. The village of Wilmette, the Kenilworth Union Church and a large number of property owners in the two villages were made parties to this bill by intervening petitions. A motion to dissolve the temporary injunction awarded on this bill was entered in the circuit court and affidavits of various witnesses were filed for and against said motion. The motion to dissolve was sustained by the circuit court and the injunction dissolved, but the bill appears to have been retained and the case is still pending in the circuit court.

The defendants also introduced a record in another case, wherein the village of Kenilworth and others were complainants and the Kenilworth Sanitarium and others were defendants. The object sought by this bill was to restrain the Kenilworth Sanitarium from emptying its sewerage into said ditch. That case was heard in the superior court of Cook county on its merits, and a perpetual injunction was awarded in accordance with the bill, enjoining said sanitarium from using said ditch or culvert as an outlet for its sewerage. The sanitarium appealed from the superior court decree, and on February 21, 1906, the opinion of this court was filed affirming the decree of the superior court, and the case is reported as *Kenilworth Sanitarium* v. *Village of Kenilworth, 220* Ill. 264. In this last case Joseph Sears appears as one of the complainants, but in that suit no attempt was made to interfere in any way with the physical condition of the culvert or ditch.

In addition to the records in these two cases the court heard, upon the motion to dissolve, a number of witnesses and affidavits. In the testimony of Elser given at the hearing of this motion, it appears that after the court had sustained the motion to dissolve the injunction in circuit court general No. 266,450, Mr. Pease, one of the attorneys in that case representing, among others, Joseph Sears, telephoned to Elser to come up to his office; that Elser went there, and the following is Elser's version of what occurred:

Pease: "Tell the court what happened in my office.

A. "You asked me what I proposed to do about it. I told you that I would like to stop the proceedings; that I was willing to give all my time, but having a mortgage on the property I could not afford to go to any expense. Then you volunteered to carry the expense provided I would put in my time."

He admits that Joseph Sears signed his bond and agreed to pay all expenses and costs that might accrue in the present suit, and that Elser was not to be liable for anything. It is also testified to by Elser that he had been watching the progress of the proposed change in the culvert and had spoken to another lawyer about the matter, and said that he employed Mr. Pease because he had already been engaged in litigation for Mr. Sears, and that he would be more familiar with the case than a lawyer who had nothing to do with the controversy; that he intended to have an injunction if they attempted to enlarge the culvert. Joseph Sears and Warren Pease both file affidavits in the case, neither of whom contradicts Elser regarding the circumstances connected with the commencement of the suit.

No answer to the bill was filed nor was there any hearing except upon the motion to dissolve the injunction, upon the hearing of which the circuit court dissolved the injunction and dismissed complainant's bill, to which Elser duly excepted and now brings the record to this court for review, and asks a reversal on the grounds that the court erred in

dissolving the injunction and in dismissing the bill, and because the decision of the court was contrary to the law and to the evidence heard on the motion to dissolve.

PEASE, SMIETANKA & POLKEY, and GEORGE GILLETTE, (FRANCIS LACKNER, of counsel,) for appellant:

Where a complainant shows a good cause of action by his bill, his motives in bringing the suit are immaterial; and the fact that some other person assists him, or even pays the costs of the proceeding, is likewise immaterial. *Zeigler* v. *Hughes,* 55 Ill. 288; *Gage* v. *DuPuy,* 137 id. 652.

The question of champerty can only be raised between the parties to the alleged champertous contract. It cannot be raised collaterally. *Gage* v. *DuPuy,* 137 Ill. 652; *Torrence* v. *Shedd,* 112 id. 466.

The protection of rights in an easement, and especially in easements in flowing water, is a proper subject of equitable jurisdiction. *Hicks* v. *Silliman,* 93 Ill. 255; *Graham* v. *Keene,* 143 id. 425; *Dayton* v. *Drainage Comrs.* 128 id. 271.

A court of equity has jurisdiction to interpose by injunction where public officers, under claim of right, are proceeding illegally to impair the rights or injure the property of individuals. *Peoria* v. *Johnson,* 56 Ill. 45; *McIntyre* v. *Storey,* 80 id. 127.

Equity will presume damage from the invasion of a right. *Plumleigh* v. *Dawson,* 1 Gilm. 544; *Webb* v. *Portland Manf. Co.* 3 Sumner, 189; *Smith* v. *Rochester,* 38 Hun, 612; *Whipple* v. *Cumberland Manf. Co.* 2 Storey, 661; *Ross* v. *Thompson,* 78 Ind. 90.

Where the act is such as may ripen into an easement if persisted in, equity will enjoin it, irrespective of present damage. *Webb* v. *Portland Manf. Co.* 3 Sumner, 189; *Plumleigh* v. *Dawson,* 1 Gilm. 544; *Lund* v. *New Bedford,* 121 Mass. 194; *Chapman* v. *Thames Manf. Co.* 13 Conn. 268; *Knitting Co.* v. *Dean,* 43 N. Y. Sup. 27.

HENRY S. ROBBINS, and FREDERICK A. BROWN, for appellees:

Village trustees are vested with a large discretion in the repair of streets, and the courts will not, except when a strong case of abuse is shown, interfere by injunction. Rev. Stat. chap. 24, sec. 62; *Hotz* v. *Hoyt*, 135 Ill. 388; *Thornton* v. *Roll*, 118 id. 350; *Barnard* v. *Highway Comrs.* 172 id. 391; *Baughman* v. *Heinselman*, 180 id. 251; *Brush* v. *Carbondale*, 78 id. 74.

To sustain an injunction it must appear beyond reasonable doubt that an immediate injury will result. Apprehension of future injury, merely conjectural and not at all probable, is not sufficient. *Wilson* v. *Bondurant*, 142 Ill. 645; *Daum* v. *Cooper*, 208 id. 391; *Lloyd* v. *Coal Co.* 210 id. 460; *Oswald* v. *Wolf*, 129 id. 200; *Highway Comrs.* v. *Green*, 156 id. 504; *Poyer* v. *DesPlaines*, 123 id. 11; *Owens* v. *Crossett*, 105 id. 354; *Harms* v. *Jacobs*, 158 id. 505.

The ditch is of uniform size, and the removal of the culvert will result in no enlargement of the ditch, increase of the flow or overflow of appellant's lands. The bill admits that no immediate injury will result. The easement of highway permits entry upon servient land to repair. *Chronic* v. *Pugh*, 136 Ill. 539; *McMillan* v. *Cronin*, 75 N. Y. 474; *Wessels* v. *Colebank*, 174 Ill. 618; *Toothe* v. *Bryce*, 50 N. J. Eq. 589.

The fact that the village has for twenty-three years conducted this water across this highway through a culvert does not prevent it from changing to an open sluice-way. The village holds its rights in the highway, and power to repair the same, in trust for the people of the whole State. *Chicago* v. *Rumsey*, 87 Ill. 348; *McCartney* v. *Railroad Co.* 112 id. 611; *Byrne* v. *Railway Co.* 169 id. 75; *Lumber Co.* v. *Cicero*, 176 id. 9; *People* v. *Railroad Co.* 178 id. 605.

Where there are no elements giving rise to estoppel, the control of the municipality over its highways is not lost by

mere lapse of time.  *Lee* v. *Mound Station,* 118 Ill. 304; *Sullivan* v. *Tichenor,* 179 id. 97; *DeKalb* v. *Luney,* 193 id. 185; *Russell* v. *Lincoln,* 200 id. 511.

This village could not, even by express contract, grant away its right to make such changes in the highway as the public interest requires.  *Field* v. *Barling,* 149 Ill. 556; *Hibbard* v. *Chicago,* 173 id. 91; *Alton* v. *Transportation Co.* 12 id. 38; *Quincy* v. *Jones,* 76 id. 231.

Mr. JUSTICE VICKERS delivered the opinion of the court:

Two grounds are urged in support of the decree of the circuit court: (1) That there is no equity on the face of the bill; (2) that there is sufficient evidence of champerty, collusion and imposition to warrant the court in dismissing the bill on that ground.

This being a bill for an injunction and no other relief, if upon the face of the bill no sufficient ground for equitable relief is shown, the court may, on motion, dissolve the injunction and dismiss the bill.  (*Edwards* v. *Beaird,* Breese, 70; *State Bank* v. *Stanton,* 2 Gilm. 352; *Puterbaugh* v. *Elliott,* 22 Ill. 157; *Winkler* v. *Winkler,* 40 id. 179; *March* v. *Mayers,* 85 id. 177; *Heinroth* v. *Kochersperger,* 173 id. 205; *Canal Comrs.* v. *Village of East Peoria,* 179 id. 214.) If it be conceded that, upon sufficient evidence to show that the court and its processes are being used in bad faith and for fraudulent purposes, the court may dismiss the action, certainly it cannot be seriously contended that the evidence in this record would warrant such course.  Here was a matter in dispute involving a large number of people on both sides of the controversy, and it is but reasonable to expect that the property owners on both sides of the dividing ridge would take an interest in any litigation the result of which would affect their interests.  In a case where a common right is involved, the participation of any party having an interest in the result of the litigation cannot be held to be evidence

of champerty or maintenance. It is said that any interest whatever in the subject matter of the litigation is sufficient to exempt one who gives aid from the charge of illegal maintenance. (5 Am. & Eng. Ency. of Law,—2d ed.—820, and cases there cited.) Aside from this, the law is well settled in this State that the fact that the litigation grows out of a champertous contract is no defense in a collateral proceeding, and the question can only be raised between the parties to the alleged champertous contract and their privies. (*Torrence* v. *Shedd*, 112 Ill. 466; *Gage* v. *DuPuy*, 137 id. 652; *Burton* v. *Perry*, 146 id. 71; *Boone* v. *Chiles*, 10 Pet. 177.) The dismissal of the bill cannot be sustained on the alleged · ground that the litigation resulted from a champertous contract or that Sears is guilty of illegal maintenance in rendering aid to appellant. The decree, therefore, must stand or fall on the sole ground that there is no equity shown on the face of the bill.

We think the utmost that can be claimed for the village of Gross Point is, that it has an easement to discharge the water through the culvert and down through the ditch to Lake Michigan. If such easement exists, (which is not now decided,) we do not consider it necessary to determine, under the issues as now presented, how or when it originated. If it commenced with the original construction in 1867 and by some sort of succession it is now claimed by the village, the voluntary reduction in 1883 from the larger to the smaller opening would be evidence tending to show an abandonment of the prior right to the larger flowage. Assuming the existence of the easement as now enjoyed, it is contended that the village authorities, in the discharge of statutory duties, may, in their discretion, enlarge the culvert and thus increase the burdens on the servient estates. To this contention we cannot assent. The owner of an easement cannot materially · increase the burden of it upon the servient estate. (Jones on Easements, sec. 827.) For the purpose of this decision it must be assumed that the proposed change in the culvert

will increase the burdens upon the lands of appellant. It is charged in the bill that such result will follow, and we think the facts stated support the charge. If, as appellees contend, no more water will pass through the proposed culvert than the present one, why should the village expend $5000 to build the new one? It is not suggested that the present culvert is worn out or out of repair.

It is contended that the bill does not show a cause of immediate, irreparable and certain damages to the appellant. While the damages will depend, to some extent, on heavy rainfalls and freshets and the consequent accumulation of water in Skokie swamp, still courts take cognizance of such well known facts as that in certain seasons of the year in certain localities there is a heavy rainfall and that in consequence there is a liability to freshets and excessive accumulations of water, and when a wrongful act is threatened which, in connection with this fact, will injuriously affect the property rights of a citizen, it is one of the valuable features of equity jurisdiction to anticipate and prevent such threatened injury. In such case the exercise of such jurisdiction is for the benefit of both parties,—in disclosing to the wrongdoer that he is proceeding without authority of law, and in protecting the innocent from injuries which, if inflicted, would wholly destroy his rights. (*Vicksburg Water-works Co.* v. *Vicksburg,* 185 U. S. 66; *Same* v. *Same,* 202 id. 453.) In a state of nature none of the water falling west of the dividing water-shed ever went upon appellant's land. There is no water-course carrying the waters to Lake Michigan except this artificial ditch. Under the law no one has the right to collect water in an artificial channel and cast it upon the land of another in undue and unnatural quantities, contrary to its natural course, and if he attempts to do so a court of equity will interpose to prevent the act. *Hicks* v. *Silliman,* 93 Ill. 255.

The doctrine of *Peck* v. *Herrington,* 109 Ill. 611, is not in any way in conflict with the *Hicks case.* In the *Peck-*

223—16

*Herrington case* the water was carried by artificial drains to the channel where it would go in a state of nature and through this natural channel to the lower land, while in the *Hicks case* and in the case at bar the water is conveyed by an artificial ditch where, in a state of nature, it did not and could not go. The cases are in entire harmony.

It is strenuously contended that the village of Gross Point has a right, under the powers conferred upon it by the statute, to make this proposed improvement, and that a court of equity should not interfere with it in the discharge of its duties to the public. This contention cannot be sustained. Section 13 of article 2 of the constitution provides: "Private property shall not be taken or damaged for public use without just compensation. Such compensation, when not made by the State, shall be ascertained by a jury, as shall be prescribed by law." This provision of the constitution is not self-executing. Chapter 47 of Hurd's Revised Statutes, entitled "Eminent Domain," makes provision for the exercise of the right by all corporations or bodies politic to which the State has delegated the power of eminent domain. Cities, towns and villages are authorized by paragraph 89 of section 62 of the City and Village act to exercise the right for certain enumerated purposes. Still there is nothing in the Eminent Domain law or in the chapter on cities and villages authorizing municipal corporations to take or damage private property for public use except in the same manner and subject to the same restrictions as other agencies through which the right may be exercised. A municipal corporation has no greater right than a natural person to divert surface waters in large quantities by an artificial channel upon the land of another, except it may do this in the exercise of eminent domain, upon making just compensation as required by the constitution. Jones on Easements, sec. 775; *City of Aurora* v. *Love,* 93 Ill. 521; *City of Elgin* v. *Kimball,* 90 id. 356; *Nevins* v. *City of Peoria,* 41 id. 502; *Stack* v. *City*

*of East St. Louis,* 85 id. 377; *Young* v. *Highway Comrs.* 134 id. 569.

Nor can this municipality proceed with this proposed improvement and relegate appellant to his action at law for the damages sustained. While equity will not take jurisdiction, at the suit of one whose property, or some part of it, is not actually taken, to restrain the making of an improvement or building a railroad, still where, as here, the threatened act involves an actual taking, the expropriation will be enjoined until the damages are ascertained and paid in the manner provided by the law. (*Stetson* v. *Chicago and Evanston Railroad Co.* 75 Ill. 74; *Patterson* v. *Chicago, Danville and Vincennes Railroad Co.* 75 id. 588; *Chicago, Burlington and Quincy Railroad Co.* v. *McGinnis,* 79 id. 269; *White* v. *Metropolitan Elevated Railroad Co.* 154 id. 620; *Doane* v. *Lake Street Elevated Railroad Co.* 165 id. 510; *Parker* v. *Catholic Bishop,* 146 id. 158.) In the last case above cited it is said: "It seems to be well settled in this State that where no part of the land or property of the complaining owner is physically taken for or in making the proposed public improvement, and the damages claimed to result are therefore consequential only, this provision of the constitution does not require the ascertainment and payment of such damages as a condition precedent to the exercise of the right or power." The converse of this proposition is equally well settled.

It follows from what has been said that the court erred in dissolving the injunction and dismissing the bill, in consequence of which the decree of the circuit court of Cook county is reversed and the cause remanded to that court for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*