El Pueblo de Puerto Rico, representado por Guillermo Esteves, Comisionado del Interior, demandante y apelado, *v.* Narciso y Violante Rabell Cabrero, demandados y apelantes.

No. 4082.—*Visto:* Noviembre 17, 1926. *Resuelto:* Diciembre 23, 1926

1. Dominio Eminente—Naturaleza, Extensión y Delegación del Poder—Incautación (*Taking*) de la Propiedad Privada—Actos Constitutivos de tal Incautación.—Cuando se inundan materialmente terrenos debido a un

excesivo aumento de agua, tierra, arena u otras materias, o colocando cualquier construcción artificial sobre ellos, destruyendo efectivamente su uso o impidiéndolo, ello equivale a una incautación dentro del alcance del Acta Jones.

2. DOMINIO EMINENTE—NATURALEZA, EXTENSIÓN Y DELEGACIÓN DEL PODER—EJERCICIO DEL PODER DE DOMINIO EMINENTE.—El poder de dominio eminente debe ejercitarse de acuerdo con la ley y teniendo en cuenta los derechos del dueño de los terrenos a una justa compensación.

3. DOMINIO EMINENTE—PROCEDIMIENTO PARA TOMAR U OCUPAR LA PROPIEDAD Y DETERMINAR LA COMPENSACIÓN—DE LA EXPROPIACIÓN FORZOSA EN GENERAL—TOMA U OCUPACIÓN DE LA PROPIEDAD PENDIENTE EL PROCEDIMIENTO—OCUPACIÓN PREVIA AL DECRETO DE EXPROPIACIÓN.—Siendo el pago de suficiente compensación un requisito previo estatutorio indispensable para privar a uno de su propiedad, ejercitada la acción de expropiación forzosa, no puede tomarse u ocuparse la propiedad objeto de dicho procedimiento antes de decretarse la expropiación.

4. TERRITORIOS—ACCIONES CONTRA EL PUEBLO DE PUERTO RICO—CONSENTIMIENTO PARA SER DEMANDADO—COMPARECENCIA VOLUNTARIA DEL PUEBLO EN UNA ACCIÓN—EFECTO.—Cuando El Pueblo de Puerto Rico comparece ante una corte en solicitud de un procedimiento de expropiación forzosa contra los dueños de cierta propiedad, su consentimiento a ser demandado para responder de los actos de sus funcionarios, respaldados por el Gobierno, debe presumirse concluyentemente.

5. TERRITORIOS—ACCIONES CONTRA EL PUEBLO DE PUERTO RICO—CONSENTIMIENTO PARA SER DEMANDADO—COMPARECENCIA VOLUNTARIA DEL PUEBLO EN UNA ACCIÓN—INCIDENTE DEL CASO PRESENTADO POR EL PUEBLO—ALEGACIÓN EN EL INCIDENTE DE SU INMUNIDAD A SER DEMANDADO.—Si una corte de equidad no puede impedir que El Pueblo de Puerto Rico alegue su immunidad a ser demandado en un procedimiento que se inicie como un incidente del caso presentado por aquel, *quare.*

6. TERRITORIOS—ACCIONES CONTRA EL PUEBLO DE PUERTO RICO—CONSENTIMIENTO PARA SER DEMANDADO—EN GENERAL.—Cuando antes de sentencia, existe una incautación (*taking*) de propiedad privada sin la debida compensación en un caso de expropiación presentado por El Pueblo de Puerto Rico, un *injunction* para proteger y asegurar los derechos del dueño sobre tal propiedad puede considerarse como equivalente al pleito de reivindicación que contra El Pueblo, autoriza la Ley No. 76 de 1916 (p. 155).

7. DOMINIO EMINENTE—REMEDIOS DE LOS DUEÑOS DE PROPIEDAD—REMEDIO POR INJUNCTION—INJUNCTION PARA IMPEDIR LA TOMA U OCUPACIÓN DE PROPIEDAD—EN GENERAL—INJUNCTION CONTRA FUNCIONARIOS DEL GOBIERNO.—El acto de los funcionarios del Gobierno al inundar unas propiedades objeto del procedimiento de expropiación forzosa antes de decretarse la expropiación debe considerarse como torticero y procede un *injunction* contra dichos funcionarios individualmente.

8. DOMINIO EMINENTE—REMEDIOS DE LOS DUEÑOS DE PROPIEDAD—REMEDIO POR INJUNCTION—INJUNCTION PARA IMPEDIR LA TOMA U OCUPACIÓN DE PROPIEDAD—EN GENERAL—NATURALEZA Y FUNDAMENTOS DEL REMEDIO.—Cuando El Pueblo o sus funcionarios se incautan de la propiedad objeto de un procedimiento de expropiación forzosa antes de decretarse la expropiación, un *injunction* debe expedirse sin tenerse en cuenta la cuestión de daños irreparables o de si existen o no remedios adecuados en ley.

9. DOMINIO EMINENTE—REMEDIOS DE LOS DUEÑOS DE PROPIEDAD—REMEDIO POR INJUNCTION—INJUNCTION PARA IMPEDIR LA TOMA U OCUPACIÓN DE PROPIEDAD—INCAUTACIÓN DE PROPIEDAD SIN LA DEBIDA COMPENSACIÓN.—En el caso de que exista una incautación de propiedad privada so color de dominio eminente y sin la debida compensación, las cortes ejercitarán su juris-dirección de equidad aun cuando los daños sean remotos.

10. DOMINIO EMINENTE—COMPENSACIÓN—NECESIDAD Y SUFICIENCIA EN GENERAL—NECESIDAD DEL PREVIO PAGO PARA TOMAR U OCUPAR LA PROPIEDAD PRIVADA.—Siendo el pago de compensación un requisito previo estatutorio para privar a uno de su propiedad, el dueño de ésta tiene derecho a que la misma no se tome u ocupe antes de haber mediado la debida compensación, no importa que una sentencia de expropiación pueda obtenerse prontamente o los motivos que el dueño pueda tener para rechazar una oferta de pago y retener la propiedad.

11. DOMINIO EMINENTE—PROCEDIMIENTOS PARA OCUPAR O TOMAR (*to Take*) LA PROPIEDAD Y FIJAR LA COMPENSACIÓN—CONDICIÓN PREVIA A LA EXPROPIACIÓN O GRAVAMEN DE LA PROPIEDAD—DECLARACIÓN DE UTILIDAD PÚBLICA—DECLARACIÓN POR LA LEGISLATURA Y EFECTO.—La declaración de utilidad por el Consejo Ejecutivo no es necesaria cuando la Legislatura ha determinado un método distinto para tal declaración.

SENTENCIA de *Gabriel Castejón, J.* (Aguadilla), declarando sin lugar solicitud de injunction *pendente lite.* Revocada.

*García Méndez & García Méndez,* abogados de los apelantes; *Hon. Attorney General, George C. Butte. Sub-Attorney General Felipe Janer, Jr.,* y *Antonio Piñeiro,* Right-of-Way Attorney, Servicio del Riego, abogados del apelado.

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tribunal.

Los demandados apelan de una orden de la Corte de Distrito de Aguadilla negándose a expedir un auto de *injuntion* para impedir que Guillermo Esteves y otros inunden los terrenos de los apelantes Narciso y Violante Rabell Cabrero. El Pueblo de Puerto Rico había iniciado un procedimiento de expropiación forzosa contra dichos apelantes. La petición de *injunction* era un incidente de dicho pleito. La corte declaró sin lugar la petición. Uno de los fundamentos para denegar la solicitud de *injunction* fué que al Pueblo de Puerto Rico no se le podía demandar sin su propio consentimiento, y que no se había demostrado que se hubieran ocasionado daños irreparables, por lo que nos parece prudente transcribir parte de la demanda radicada en el pleito principal de expropiación de dichos terrenos.

El principio de dicha demanda lee como sigue:

"Comparece El Pueblo de Puerto Rico representado por el Hon. Guillermo Esteves, Comisionado del Interior de Puerto Rico, y éste a su vez por el Hon. G. C. Butte, Attorney General y los abogados Antonio Piñeiro, abogado del Riego y el fiscal del distrito y respetuosamente alegan:

"Que el demandante, el Pueblo de Puerto Rico es un cuerpo político, con capacidad para demandar y ser demandado, debidamente organizado de acuerdo con la Ley del Congreso de los Estados Unidos de América, de fecha 2 de marzo de 1917 titulada 'Ley para proveer un Gobierno Civil para Puerto Rico, y para otros fines'; que el Comisionado del Interior Guillermo Esteves comparece en representación de El Pueblo de Puerto Rico por virtud de la facultad que le ha sido conferida por la sección 10 de la Ley No. 63, aprobada el 19 de junio de 1919, proveyendo para la construcción de un sistema de riego en la vecindad de Isabela, Aguadilla y Moca."

Después de describir los terrenos y alegar otras cuestiones, en el párrafo 7 de la demanda el Pueblo de Puerto Rico alega los esfuerzos que sus funcionarios han realizado para obtener los terrenos de los apelantes por medio de gestiones; que dichos terrenos valían de $26,000 a $27,000, de acuerdo con los cálculos de los agentes del demandante, incluyendo además, según la opinión del demandante, cualquiera otra clase de daños que los apelantes pudieran sufrir.

El párrafo 8 de la demanda alega que "el demandante hace esta solicitud de expropiación forzosa de esta parcela con el fin de construir la represa del Guajataca del Servicio del Riego de Isabela. En tal virtud, el demandante suplica a esta Hon. Corte, se sirva dictar sentencia a su favor, declarando que el uso y la necesidad pública exigen la expropiación de las parcelas de terreno referidas anteriormente y que dicho demandante tiene derecho a tomar y retener las descritas parcelas de terreno para el uso público especificado, mediante el pago de la indemnización que determine este tribunal, determinando la cantidad que ha de pagar el demandante al demandado por las referidas parcelas, así

como también por daños y perjuicios que se ocasionen por esta expropiación forzosa.

Por lo tanto, no dudamos que el procedimiento de expropiación forzosa fué presentado por El Pueblo de Puerto Rico en su carácter de soberano o quasi-soberano, y que la expropiación forzosa se solicitaba en virtud de una ley especial de la Legislatura aprobada el 19 de junio de 1919. El certificado del Secretario de la corte de distrito demuestra que el procedimiento de expropiación aún no se ha visto en su fondo, no estando listo para juicio. El 19 de octubre de 1926 los demandados radicaron la siguiente petición de *injunction:*

"Comparecen los demandados en este caso por conducto de sus abogados suscribientes y a la Hon. Corte respetuosamente exponen :

"1.—Que en el presente caso El Pueblo de Puerto Rico ha instado una acción de Expropiación forzosa contra los aquí demandados con el objeto de privarles y expropiarles de ciertas parcelas de terreno de su propiedad ascendentes a 314 cuerdas con 54 céntimos, sitas en el barrio Guajataca de San Sebastián, que se describen en dicha demanda de Expropiación Forzosa y que son las siguientes: (Se describen). Estas fincas son segregaciones de una finca denominada 'Esperanza' en el barrio Guajataca de San Sebastián, distrito judicial de Aguadilla, P. R., compuesta de mil doscientas treinta y siete cuerdas con veintiocho céntimos, propiedad de los aquí demandados.

"2.—Que en la referida demanda de expropiación forzosa se alega que dichos terrenos son de absoluta necesidad e imprescindibles para que el Pueblo de Puerto Rico pueda construir la presa Guajataca que forma parte del Riego Público de Isabela.

"3.—Que una vez radicada la demanda, los demandados han formulado sus alegaciones contra la referida demanda consistentes en mociones sobre nulidad del nombramiento del Hon. Juez Castejón hecho por el Hon. Gobernador de Puerto Rico, y sobre especificación, las cuales mociones fueron resueltas en contra de los aquí demandados, habiéndoseles concedido un término para formular sus nuevas alegaciones contra la demanda, sin que haya vencido el término para hacerlo.

"4.—Que no se han formulado todavía las alegaciones de hecho en contra de la demanda de expropiación forzosa y que El Pueblo

de Puerto Rico no ha obtenido decreto de corte alguna concediendo la expropiación de los terrenos de que se trata, ni fijando montante de compensación ni de daños y perjuicios que hayan de pagarse por dichos terrenos, siendo así que todavía no está el caso listo para juicio, razón por la cual no puede haberse obtenido el decreto a que se ha hecho referencia.

"5.—Que el aquí demandante contra la voluntad de los demandados, a pesar del requerimiento para que se abstuviera de hacerlo, ha comenzado a inundar los terrenos de que se trata en este caso, parte de los cuales están sembrados; y dicho demandante pretende e insiste en continuar inundando dichos terrenos sin el consentimiento y contra la voluntad de los aquí demandados.

"6.—Que de continuar el demandante inundando los terrenos de los demandados que se han descrito ya en esta solicitud, se destruirán todas las plantaciones de los aquí demandados en las fincas de referencia, se destruirán las cercas, caminos y abrevaderos de las referidas parcelas de terreno, y se causarán en general daños irreparables y perjuicios contra los aquí demandados que serán difícil determinar una vez que tales terrenos sean inundados; y que serán aún más difícil de recobrar tratándose de que la parte demandante es el Pueblo de Puerto Rico, y aún más se verían los demandados obligados a iniciar una acción especial de daños y perjuicios contra El Pueblo de Puerto Rico; y finalmente que tal acción del demandante viola y destruye el derecho de propiedad que tienen los demandados sobre las parcelas de que se trata e infringe el artículo 355 del Código Civil y hace ilusorio el derecho de propiedad y constituye un atropello por parte de El Pueblo de Puerto Rico; y finalmente infringe la enmienda quinta y la enmienda catorce de la Constitución de los Estados Unidos que garantiza la primera, el que no se privará a nadie de su propiedad particular para fines de utilidad pública sin la compensación correspondiente, y la segunda, que prescribe que nadie podrá ser privado de su propiedad sin el debido proceso de ley.

"7.—Que de no librarse el injunction de que se trata, el demandante continuará ejercitando los actos de violación de que ha venido haciendo méritos, y continuará inundando los terrenos de los aquí demandados.

"Por todo lo cual, los demandados solicitan del tribunal que libre una orden de injunction dirigida al Hon. Comisionado del Interior de Puerto Rico, señor Guillermo Esteves, en representación de "El Pueblo de Puerto Rico, y a sus representantes, agentes, empleados y subalternos, para que se abstengan de continuar ejerci-

tando los actos de que se trata hasta que se resuelva el pleito de expropiación a su favor, apercibiendo al demandante y a sus representantes, agentes, empleados y subalternos que de desobedecer la orden del tribunal serán culpables de desacato."

[1] La primera defensa del Pueblo de Puerto Rico a la solicitud de *injunction* era que no podía ser demandado sin su propio consentimiento. En algunas partes de su argumentación el Pueblo de Puerto Rico aparentemente alega que no ha habido la "incautación" (*taking*) de los terrenos de los apelantes según lo prohibe el Acta Orgánica de Puerto Rico. Por lo tanto, creemos prudente determinar si los hechos en este caso demuestran o no una incautación. El efecto de la inundación, aunque no transfiera el título de las tierras al Pueblo de Puerto Rico, privaría a los apelantes del uso y disfrute de las mismas, y, por consiguiente, eso equivaldría a una incautación según dicha palabra ha sido definida por la Corte Suprema de los Estados Unidos, así como por otras cortes. El caso principal sobre esta cuestión es el de *Pumpelly* v. *Green Bay Co.,* 13 Wall. 166, 168 (20 L. Ed. 557), citado por los apelantes. En dicho caso la corte, por opinión dictada por el Juez Miller, resolvió que no era necesaria la absoluta incautación de la propiedad en el sentido estricto de la palabra, para que el caso quedara dentro de la protección de esta disposición constitucional; y que el uso corriente y necesario de la propiedad podría interrumpirse tan seriamente que sería equivalente a una incautación dentro del alcance de la Constitución; que resultaría muy curioso y poco satisfactorio si se resolviera que cuando el gobierno se abstenía de la conversión absoluta de bienes inmuebles para uso público, podía destruir su valor enteramente y ocasionar un daño irreparable y permanente en cualquier sentido, ya que dentro del significado estricto de la palabra la propiedad no se tomaba para uso público. La corte analizó las autoridades con antelación al 1871 y resolvió que cuando se inundaban mate-

rialmente bienes inmuebles debido a un excesivo aumento de agua, tierra, arena u otras materias, o colocando cualquier construcción artificial sobre ellos, destruyendo efectivamente su uso o impidiéndolo, esto equivalía a una incautación dentro del alcance de la Constitución. El caso principal fué citado por nosotros en el caso de *American Railroad Co.* v. *Quiñones,* 15 D.P.R. 1, en el que dijimos lo siguiente:

"El derecho de propiedad es exclusivo y no consiente el uso de la finca para fines contrarios a los derechos del dueño y causar daños irreparables a una finca equivale en cierto modo a privar de su propiedad al dueño de la misma, y en este sentido la ley le protege con respecto a tales actos."

*U. S.* v. *Lynah,* 188 U. S. 445, y los casos citados, sostienen el caso principal, como lo hace además el de *U. S.* v. *Grizzard,* 219 U. S. 180. Este principio se expone en *Lewis on Eminent Domain,* Tercera Edición, pp. 66, 90, 100, 144, 554, y en otras páginas más.

El caso de *Stockdale et al.* v. *Río Grande Western Ry. Co.,* 77 Pac. 849, resolvió que cualquier intervención substancial sobre propiedad privada que destruya o materialmente aminore su valor, o por la cual el derecho del propietario a su uso y disfrute sea destruído o limitado en cualquier forma substancial, equivale a una ocupación, citándose numerosos casos a tal efecto. Otros casos que sostienen este extremo son los siguientes: *Vanderlip* v. *City of Grand Rapids, et al.,* 73 Mich. 522, 41 N. W. 677, 3 L.R.A. 249, 16 A.S.R. 597; *Elser* v. *Grosspoint,* 223 Ill. 230, 79 N. E. 27, 114 A.S.R. 326; y la nota del caso de Gordon v. Ellinville, 47 L.R.A. (N. S.) 462.

La sección 10 de la Ley No. 63 de 1919, dispone lo siguiente:

"El Comisionado del Interior, sus oficiales, agentes o empleados tendrán el derecho de entrar, previa notificación al propietario o representante, en cualquier terreno, para practicar deslindes y para situar y establecer cualquiera obra propuesta o inclusa en dicho sis-

tema de riego, incluyendo las líneas de cualquier canal, camino, túnel, local para depósito de agua, acueducto, planta para desarrollar fuerza, líneas transmisoras, u otra obra que se requiera, debiendo indemnizarse al propietario de los perjuicios que se le ocasionen como consecuencia de dichas obras. El Comisionado del Interior estará facultado, cuando fuere necesario, para iniciar procedimientos de expropiación a nombre de El Pueblo de Puerto Rico, con el fin de adquirir cualquier terreno o derecho comprendido en los planos aprobados del mencionado proyecto de riego; y para los fines de dichos procedimientos de expropiación, todo terreno, toda servidumbre de paso para conducción de agua y corrientes eléctricas, todo local para depósito de agua, canales, caminos túneles, acueductos, acequias, plantas de fuerza motriz, y demás cosas comprendidas y que entren en dicho plan de riego, aprobado según se ha expresado, se declara, por la presente, que son obras de utilidad pública, y, como tales, se declara que están sujetas al derecho de expropiación forzosa, pudiendo ser objeto de procedimientos de expropiación en la forma que la ley dispone; *Disponiéndose, sin embargo,* que todos los mencionados derechos y cosas pueden ser objeto de procedimientos de expropiación, sin necesidad de cumplir aquellas disposiciones de la ley que requieren una declaración de utilidad pública por el Consejo Ejecutivo, de acuerdo con la ley aprobada el 12 de marzo de 1908, titulada 'Ley para enmendar la ley titulada "Ley estableciendo la expropiación forzosa de la propiedad particular para los fines y bajo las condiciones expresadas en la misma," aprobada en marzo 12 de 1903' o con ninguna otra disposición de ley referente a declaraciones de utilidad pública; *Y disponiéndose, que* el Comisionado del Interior estará facultado en todo tiempo para adquirir para dicho sistema de riego dichos derechos y cosas, siempre que sea posible, mediante transacción fuera de la corte, para evitar los procedimientos de expropiación; *Y disponiéndose, además,* que el Comisionado del Interior queda por la presente autorizado y facultado para permutar, con la aprobación del Consejo Ejecutivo, abrevaderos para ganado por cualesquiera terrenos que El Pueblo de Puerto Rico necesitare adquirir para la construcción, conservación o explotación del canal principal y de los altos laterales de dicho sistema de riego."

Cualquiera que sea la interpretación que quiera dársele a esta sección, la misma no trata de autorizar una incautación sin la debida compensación, en los casos prohibidos por la ley.

[2] La naturaleza del dominio eminente ha sido sometida a la consideración de esta corte, principalmente en el caso de *American Railroad Co.* v. *Quiñones, supra.* En la opinión emitida por el Juez Sr. MacLeary, entre otros casos citamos el de *Saldaña* v. *La Junta Escolar de Carolina,* 14 D.P.R. 348, al efecto de que tal poder debe ser ejercitado de acuerdo con la ley y teniendo en cuenta los derechos del dueño de los terrenos a una justa compensación.

[3] La petición de *injunction,* que debe considerarse como cierta para los fines de esta apelación, dice que el Comisionado del Interior ha inundado y se propone continuar inundando los terrenos de los apelantes, y que destruiría los terrenos, caminos y cercas, haciéndolos inservibles para el cultivo. En este caso se ha amenazado a los dueños con privarles del uso de sus terrenos, y esto equivaldría a una ocupación sin la debida compensación a menos que las leyes de Puerto Rico dispongan una justa compensación sin necesidad del pago previo.

[4] Cuando la Constitución o las leyes no requieren el previo pago en la expropiación, y se pone una suma adecuada a disposición del dueño de la propiedad, a veces puede tomarse la propiedad antes de decretarse la expropiación; pero ni la Carta Orgánica, ni el Código Civil, ni aún la Ley No. 63 de 1919 contienen disposición alguna con el objeto de proteger a los apelantes con anterioridad a la sentencia de expropiación forzosa. El artículo 355 del Código Civil demuestra, como presupone la demanda, que la regla en Puerto Rico, como en muchos estados, es que se requiere el pago de suficiente compensación antes de transferirse el título del terreno. Las decisiones sostienen claramente que en los estados en que se requiere el previo pago no debe haber legalmente ninguna ocupación o intromisión en la propiedad hasta que se compense debidamente al dueño. No necesitamos vagar extensamente en busca de precedente, porque lo hallamos en el caso de *American Railroad Co.* v.

*Quiñones, supra.* En dicho caso se resolvió terminantemente por la corte que el previo pago era requisito indispensable a la transferencia del título.

[5] Asumiendo por el momento, de conformidad con el Attorney General, que todos los actos cometidos en este caso lo fueron por El Pueblo de Puerto Rico, no puede decirse que a éste no se le pueda demandar, pero cuando El Pueblo de Puerto Rico comparece ante una corte en solicitud de un procedimiento de expropiación forzosa contra los dueños de cierta propiedad, su consentimiento a ser demandado para responder de los actos de sus funcionarios, respaldados por el Gobierno, debe presumirse concluyentemente. Esto se deduce del caso de *El Pueblo de Puerto Rico* v. *Ramos,* 232 U. S. 627 (58 L. Ed. 763). En dicho caso se resolvió que si bien El Pueblo de Puerto Rico, en acciones ordinarias, no podía ser demandado sin su consentimiento, una comparecencia voluntaria, después de considerar el caso debidamente y de haberse presentado una solicitud del Attorney General para que se le hiciera parte en el pleito, fundándose en que tenía interés en la controversia, equivalía a consentimiento, y que posteriormente el Pueblo de Puerto Rico no podía presentar objeción a la jurisdicción de la Corte con motivo de su inmunidad como soberano. Se hizo distinción del caso de *El Pueblo de Puerto Rico* v. *Rosaly,* 227 U. S. 270 (57 L. Ed. 557). La corte puso en duda, al solicitarse una confiscación de bienes (*escheat*), si el consentimiento era necesario. Sin embargo, si en dicho caso era de presumirse el consentimiento, el presente recurso de apelación presenta un caso más fuerte, en vista de que El Pueblo de Puerto Rico voluntariamente compareció ante la corte para tratar de expropiar los terrenos de los apelantes.

[6] Otro aspecto del caso sería que si la solicitud de *injunction* presentada por los apelantes procedía por alguna otra razón, una corte de equidad impediría que El Pueblo

de Puerto Rico alegara su inmunidad en un caso presentado por él mismo.   Veremos, pues, que el *injunction* es el remedio adecuado—quizás el único remedio.

[7] Una ley local aprobada por la Legislatura autoriza demandas de reivindicación contra El Pueblo de Puerto Rico.   Ley No. 76 de abril 13 de 1916.   Si por algún otro fundamento el *injunction* procede, entonces tal pleito es la reivindicación cuando existe la incautación de propiedad privada sin la debida compensación.

[8] A pesar del razonamiento que precede, para demostrar que El Pueblo de Puerto Rico o sus funcionarios en su capacidad oficial podrían ser demandados en este caso, somos de opinión que los actos realizados en el presente caso no pueden interpretarse como los del Pueblo de Puerto Rico, sino como los actos individuales de los funcionarios a cargo del proyecto del riego.   Debemos de presumir que de la petición de *injunction* no aparece que hubiera habido una emergencia como una guerra o una gran amenaza a la salud pública que hiciera necesaria la inmediata incautación de esta propiedad sin esperar la sentencia en el caso de expropiación, y eso fué lo que dichos funcionarios hicieron.   Era preferible esperar algunas semanas más, o tal vez algunos años más antes que ocasionar daños a los ciudadanos de Puerto Rico.

El acto de los funcionarios del Gobierno al inundar las propiedades antes de dictarse sentencia en el procedimiento de expropiación debe considerarse como torticero, y así lo hemos resuelto en el caso de *Central Victoria* v. *Kramer,* 35 D.P.R. 183.   Véase además *Harrison* v. *St. Louis & San Francisco* R. R., 232 U. S. 318, 332 (58 L. Ed. 621).   De modo que procede un *injunction* contra los funcionarios individualmente.

La presente petición de *injunction* es incidental al pleito principal que se está tramitando, según dispone la misma Ley de *Injunction* en su párrafo 3, Ley de marzo 8 de 1906.

El Pueblo de Puerto Rico, por la Ley de 1919, autorizó a sus funcionarios a expropiar estos terrenos, pero no los autorizó a incautarse de ellos antes de la expropiación.

[9] Llegamos, pues, a la cuestión de si el *injunction* es el remedio adecuado, y nos referiremos primeramente a algunas de las decisiones de varias cortes, especialmente porque en esta clase de casos no tenemos gran cúmulo de jurisprudencia.

En *Lowery* v. *City of Pekin,* 55 N. E. 1062, 186 Ill. 387, 51 L.R.A. 301, la corte dijo:

"Se dice que no puede impedirse por medio de un injunction que la ciudad use y retenga la posesión de la propiedad del demandante en el recurso de error para ser dedicada a un camino público, por el supuesto fundamento de que el demandante en el recurso de error, si ha sufrido algún daño, tiene un remedio en ley, bien sea mediante una acción para indemnizarse de los daños sufridos por la invasión (trespass). Pero no es éste un caso en que se solicite un injunction para impedir una simple invasión (trespass). Este es un caso en el cual un municipio, alegando tener derecho a ello, ilegalmente está tratando de incautarse de la propiedad de un ciudadano particular. Ha sido ya bien establecido que el injunction es un procedimiento apropiado cuando algunas ciudades o funcionarios públicos, so color de autoridad, o alegando tener derecho a ello, ilegalmente traten de causar daño o de incautarse de la propiedad o de obstruir los derechos de un ciudadano." (Se citan varios casos.)

La corte continuó diciendo:

"El daño de que aquí se quejan es uno de naturaleza continua y permanente, para el cual no existe un remedio completo y adecuado en ley."

Al resolver que en dicho caso en realidad no se habían incautado de propiedad alguna, la corte, en *Birmingham Traction Co.* v. *Birmingham Railway & Electric Co.,* 119 Ala. 129, 43 L.R.A. 233, dijo:

"Es tan sólo cuando una parte autorizada por la ley para ejercer el derecho de dominio eminente procede sin determinar y pagar

legalmente la compensación, al ejercer el derecho de expropiación forzosa, que una corte de equidad expedirá un injunction, sin tener en cuenta la cuestión de daños irreparables o de si existen remedios adecuados en ley.'' (Se citan varios casos.)

En el caso de *State ex rel. Cotting* v. *Sommerville, Judge,* 104 La. 74, 28 So. 977, la corte resolvió que aunque la propiedad estaba sujeta a expropiación forzosa y que los procedimientos únicamente darían lugar a una sentencia condenando al pago de una cantidad de dinero, de ningún modo se infería que podía privarse de la posesión de la propiedad a su dueño con anterioridad al pago de la misma; que el retener una propiedad privada, aún en casos de expropiación forzosa, hasta que no se satisfaga el pago de una compensación justa y adecuada, estaba garantizado por la Constitución y que no había justificación legal que autorizara la infracción de este derecho, permitiendo que se transfiriera la propiedad mediante la prestación de una fianza a favor del dueño de la misma; que la corte estaba obligada a asumir que el privar a una persona de su derecho garantizádole por la Constitución equivalía *per se* a un daño irreparable; que de ser ciertas las alegaciones del peticionario, se había cometido un acto torticero y una invasión (*trespass*) y que en tal caso la corte no podía autorizar la continuación de tal acto mediante la prestación de una fianza; que el peticionario tenía derecho a retener lá posesión de su propiedad hasta que se le pagara una compensación razonable y adecuada y que no podía destruirse tal derecho teniéndose en cuenta meramente la conveniencia pública. La corte citó casos para demostrar que ''usurpaciones y daños a derechos privados de propiedad no pueden justificarse teniendo en consideración los beneficios que reportaría al comercio, y que el derecho de expropiación de propiedad privada podía ejercitarse únicamente de acuerdo con las formas prescritas por la ley.''

En el caso de *Osborne* v. *Missouri Pacific Railway Co.,*

147 U. S. 248, el remedio solicitado fué denegado.   La corte
por voz del Juez Presidente Sr. Fuller, dijo:

"La jurisdicción en equidad puede ser invocada en vista de lo
inadecuado del remedio legal cuando el daño es de carácter destruc-
tivo o continuo o irreparable por su naturaleza; y la expropiación
de propiedad particular para uso público so color de ley pero de
hecho sin autoridad, es una invasión tal de los derechos privados
que puede presumirse esencialmente irreparable, si es que en ver-
dad no puede concederse el remedio *ex debito justitiae.*"

Bajo el artículo titulado *Dominio Eminente,* encontramos,
en 10 R.C.L. 228, lo que sigue:

"Cuando se intenta o amenaza una entrada ilegal en terrenos
particulares so color de dominio eminente, la misma será prohibida
por una corte de equidad sin consideración a los requisitos usuales
de la jurisdicción en equidad.   Si algún funcionario público, o una
corporación facultada para expropiar terrenos para uso público, in-
tenta verificar una expropiación excediéndose de las facultades con-
feridales por la Legislatura o sin cumplir con las condiciones de la
concesión, un injunction será librado desde luego, aún cuando el
daño ocasionado al dueño sea trivial.   La jurisdicción en equidad
en tal caso se basa en la tentativa de hacer mal uso del poder sobe-
rano delegado por la legislatura y en la situación desigual de las
partes por la concesión de una prerrogativa a una de ellas."

[10] Como se ha resuelto frecuentemente, cuando los da-
ños son remotos las cortes no ejercitarán su jurisdicción de
equidad, pero cuando existe una incautación la regla es todo
lo contrario.   *Osborne* v. *Missouri Pac. Ry. Co., supra.*

El caso citado por el Gobierno, de la Corte Suprema de
los Estados Unidos, o sea *Transportation Co.* v. *Chicago,*
99 U. S. 635, se refiere a daños incidentales o remotos y no
a una incautación.   La corte tomó como premisa que no se
podía coger propiedad privada sin la debida compensación,
y entonces dijo:

Pero los actos realizados en el debido cumplimiento de los po-
deres gubernamentales sin invadir directamente la propiedad pri-
vada, aunque la consecuencia sea impedir su uso, se ha resuelto uni-

versalmente que no equivale a una incautación dentro del significado de la disposición constitucional.''

Para demostrar la diferencia entre una incautación y meros daños remotos, los siguientes casos también son aplicables: *Richards* v. *Washington Terminal Co.*, 223 U. S. 554, L.R.A. 1915-A 887; *Callenden* v. *March*, 1 Pick 418, 429; *Elser* v. *Village of Gross Point*, 223 Ill. *supra; Detroit* v. *Beckman*, 34 Mich. 125; *Vanderlip* v. *Grand Rapids*, 3 L.R.A. 247, *supra*, y nota.

[11, 12] En ningún caso de los que hemos encontrado, especialmente cuando el pago es un requisito previo estatutorio, se ha resuelto que la inundación de terrenos no sea una incautación. Los daños que se ocasionarían en este caso, de acuerdo con la jurisprudencia, son de naturaleza permanente y presuntivamente irreparables. Poco importa que una sentencia de expropiación pudiera obtenerse prontamente, pues según toda la jurisprudencia cuando se exige el pago previo el dueño de la propiedad tiene derecho al uso y disfrute de la misma hasta que se ha recibido de hecho una justa compensación después de dictada la sentencia o cuando menos, una oferta de pago de tal compensación posterior a la sentencia. Los motivos que pueda tener un dueño para rechazar una oferta héchale por el Comisionado del Interior no juegan papel alguno. Sus motivos pudieran ser enteramente impropios, pero se presume, sin embargo, lo contrario y tal presunción existe para beneficio de los poseedores de buena fe. Un hombre pudiera tener sólo un motivo sentimental para retener su propiedad, como por ejemplo, el de haber sido la casa solariega de su familia durante muchos años. Convenimos con el Gobierno en este caso que no era necesaria declaración alguna de utilidad por el Consejo Ejecutivo, ya que la Legislatura había determinado un método distinto para tal declaración de utilidad. Sin embargo, si en general la mera oferta de pago o consignación en corte de la supuesta justa compensación

justificara la incautación de los bienes *pendente lite,* entonces la propiedad particular podría ser tomada sin demostración alguna de que la finca específica es útil y necesaria para el público.

Según los hechos alegados en la petición, los demandados tenían derecho a que se les expidiera el *injunction* que solicitaron, *y la sentencia de la corte inferior debe ser revocada.* Somos de opinión que según la faz de la petición debe concederse el *injunction,* desde luego, pero como podrían suscitarse algunas cuestiones de hecho, *el caso debe devolverse a la corte inferior para ulteriores procedimientos no inconsistentes con esta opinión.*

El Juez Asociado Señor Hutchison no intervino.